STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Robert J. STYNES, Defendant-Appellant.

Supreme Court

*No. 02–1143–CR. Oral argument April 9, 2003.—Decided June 26, 2003.*

2003 WI 65

(Also reported in 665 N.W.2d 115.)

For the plaintiff-respondent-petitioner the cause was argued by *Shunette T. Campbell,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Patrick M. Donnelly,* assistant state public defender.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, State of Wisconsin, seeks review of an unpublished court of appeals decision that modified and affirmed a judgment of conviction against Robert J. Stynes and reversed the circuit court's order denying postconviction relief.[1] The court of appeals concluded that the repeater allegation in the State's complaint failed to provide Stynes with notice of the predicate convictions on which his repeater status was based, as required by Wis. Stat. § 973.12(1) (1999–2000) and due process.[2] In referring to those convictions, the complaint misstated the date of the convictions by one calendar day.

¶ 2. We conclude that the complaint provided Stynes with the required notice of the predicate convictions. Because the complaint, in referring to those convictions, described the offenses, stated the correct county where the convictions occurred, cited the case number, and misstated the date of the convictions by only one calendar day, we determine that the misstate-

[1] *State v. Stynes,* No. 02–1143–CR, unpublished slip op. (Wis. Ct. App. Sept. 4, 2002) (modifying and affirming judgment, and reversing order of the circuit court for Walworth County, Michael S. Gibbs, Judge).

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

ment did not meaningfully change the basis on which Stynes entered his plea. We therefore reverse the court of appeals decision.

## I

¶ 3. In March 2000, the State filed a criminal complaint against Stynes, charging him with two counts of disorderly conduct and two counts of resisting a police officer. According to the complaint, a police officer observed an apparently intoxicated Stynes lying in the grass in front of a private residence. The officer identified himself as a police officer and asked Stynes if he was okay. Stynes did not reply.

¶ 4. After the officer requested an ambulance, he continued to try to talk to Stynes, noticing a strong odor of intoxicants coming from him. Stynes eventually opened his eyes, swore at the officer, and refused to provide his name. Shortly after the ambulance arrived, Stynes got up and began to walk away. When the officer attempted to follow Stynes, he turned around and approached the officer, swearing at him, and threatening to kill him. By this time, another police officer arrived. The officers ordered Stynes to the ground but he refused. He was eventually forced to the ground by the officers, all the while struggling, pushing, kicking, and swearing.

¶ 5. Stynes was then taken to Lakeland Medical Center where he was abusive to the hospital personnel. He continued to struggle and spit on the officers, threatening them and using obscene language.

¶ 6. The complaint alleged that Stynes was a repeater within the meaning of the penalty enhancement provisions in Wis. Stat. § 939.62.[3] As the basis for his repeater status, the complaint alleged that Stynes was "convicted of damage to property and disorderly conduct on 3/18/98 in Walworth County case 98CM118; and bail jumping on 4/21/97 in Walworth County case 97CM83." The repeater allegation potentially increased

---

[3] Wis. Stat. § 939.62 allows for increased penalties for repeat offenders and provides in relevant part:

939.62 Increased penalty for habitual criminality.

(1) If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed, except for an escape under s. 946.42 or a failure to report under s. 946.425, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

(a) A maximum term of imprisonment of one year or less may be increased to not more than 2 years.

(b) A maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 4 years if the prior conviction was for a felony.

(c) A maximum term of imprisonment of more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 6 years if the prior conviction was for a felony.

(2) The actor is a repeater if the actor was convicted of a felony during the 5–year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. It is immaterial that sentence was stayed, withheld or suspended, or that the actor was pardoned, unless such pardon was granted on the ground of innocence. In computing the preceding 5–year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

the maximum term of imprisonment for the four offenses alleged in the complaint from two years to twelve years.

¶ 7. A jury found Stynes guilty of all the charged offenses. The circuit court ordered a presentence investigation which provided Stynes' criminal history and noted that he had been convicted of criminal damage to property and disorderly conduct in Walworth County on March 17, 1998. The circuit court sentenced Stynes to the maximum term of imprisonment of twelve years. This sentence reflected the imposition of enhanced penalties imposed pursuant to Wis. Stat. § 939.62.

¶ 8. Stynes filed a postconviction motion seeking commutation of the penalties imposed because the State failed to comply with the notice provision in Wis. Stat. § 973.12(1) which requires that the charging document set forth the predicate convictions on which the alleged repeater status of the defendant is based.[4] He

---

[4] Wisconsin Stat. § 973.12(1) provides:

> Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea. The court may, upon motion of the district attorney, grant a reasonable time to investigate possible prior convictions before accepting a plea. If the prior convictions are admitted by the defendant or proved by the state, he or she shall be subject to sentence under s. 939.62 unless he or she establishes that he or she was pardoned on grounds of innocence for any crime necessary to constitute him or her a repeater or a persistent repeater. An official report of the F.B.I. or any other governmental agency of the United States or of this or any other state shall be prima facie evidence of any conviction or sentence therein reported. Any sentence so reported shall be deemed prima facie to have been fully served in actual confinement or to have been served for such period of time as is shown or is consistent with the report. The court shall take judicial notice of

argued that although the presentence report identified convictions dated March 17, 1998, there was no evidence for any convictions dated March 18, 1998, as alleged in the complaint. Stynes contended that this error resulted in the State's failure to satisfy the notice requirement mandated by Wis. Stat. § 973.12(1). The circuit court denied the postconviction motion.

¶ 9. Stynes appealed. The court of appeals agreed with Stynes that the State failed to comply with Wis. Stat. § 973.12(1) and due process. It therefore modified the judgment of conviction by commuting Stynes' sentence to the maximum allowed by law without the repeater penalty enhancement. It determined that "the State had failed in its burden to plead the repeater allegation with relative clarity and precision, thus denying Stynes notice of the proper basis of the repeater." *State v. Stynes,* No. 02–1143–CR, unpublished slip op. at ¶ 15 (Wis. Ct. App. Sept. 4, 2002).

## II

¶ 10. This case presents us with an opportunity to review the State's obligation to provide a defendant with notice of the predicate convictions on which the State intends to base repeater penalty enhancements. Specifically, we must address here whether the State satisfied Wis. Stat. § 973.12(1) and due process when the complaint misstated the date of the convictions as March 18, 1998 rather than March 17, 1998.

¶ 11. Whether the notice complied with § 973.12(1) presents a matter of statutory interpretation which is a question of law subject to independent

the statutes of the United States and foreign states in determining whether the prior conviction was for a felony or a misdemeanor.

appellate review. *State v. Martin/Robles,* 162 Wis. 2d 883, 891–892, 470 N.W.2d 900 (1991). Compliance with the notice requirement also raises constitutional due process concerns. *State v. Gerard,* 189 Wis. 2d 505, 512 n. 6, 525 N.W.2d 718 (1995). The application of constitutional principles to the facts of a case is subject to independent appellate review. *State ex rel. McMillan v. Dickey,* 132 Wis. 2d 266, 280, 392 N.W.2d 453 (1986).

### III

¶ 12. We begin our discussion by examining the repeater penalty enhancement provisions in Wis. Stat. § 939.62. These provisions allow for an increase in the maximum term of imprisonment that can be imposed as the result of a criminal conviction. For example, in this case, each of the two disorderly conduct charges carried a maximum prison term of 90 days and each of the two resisting a police officer charges carried a maximum prison term of nine months. However, by operation of the penalty enhancement provisions, the maximum term for each charge was increased to three years.

¶ 13. A person is a repeater if he or she was convicted of one felony or three misdemeanors during the five-year period immediately preceding the commission of the crime for which he or she is now being sentenced. Wis. Stat. § 939.62(2). When seeking repeater penalty enhancements, Wis. Stat. § 973.12(1) requires that the State allege the predicate convictions within the applicable charging document "before or at arraignment, and before acceptance of any plea." Accordingly, the State cannot add a repeater allegation after arraignment and plea. *Martin/Robles,* 162 Wis. 2d at 896. The reason for requiring the repeater allegation

early in the process is to ensure that when the defendant is asked to plead, he or she has notice of the extent of the potential punishment. *State v. Wilks,* 165 Wis. 2d 102, 110, 477 N.W.2d 632 (Ct. App. 1991).

¶ 14. Wisconsin Stat. § 973.12(1) does not specifically identify the information the State is to include in a repeater allegation. However, our case law establishes the minimum level of specificity required of a repeater allegation.

██

¶ 15. A repeater allegation should identify the repeater offense, the date of conviction for that offense, and the nature of the offense—whether for a felony or misdemeanor conviction. *Gerard,* 189 Wis. 2d at 515–16. The date of conviction is important because the ability to use the conviction to establish repeater status depends on whether the conviction falls within the five-year period identified in Wis. Stat. § 939.62(2). The State bears the burden of pleading a repeater allegation "with relative clarity and precision." *Wilks,* 165 Wis. 2d at 111.

## IV

██

¶ 16. The repeater allegation in the complaint against Stynes misstated the date of the convictions by one calendar day. Stynes does not assert that there was any error in the description of the offenses, the identification of the county where the convictions occurred, or the case number cited.

¶ 17. In analyzing the error in the date, the court of appeals determined that the convictions cited in the repeater allegation did not exist. Based on this determination, it concluded that "Stynes's assessment of the

possible punishment at the time of sentencing is meaningfully changed due to another conviction being substituted for the one set forth in the charging documents." *Stynes,* slip op. at ¶ 15. Thus, the court of appeals concluded that the State failed to comply with the statutorily mandated notice requirement and that Stynes' due process rights were violated. It therefore modified the judgment of conviction by commuting Stynes' sentence to the maximum allowed by law without the repeater enhancements.

¶ 18. The State argues that the court of appeals did not properly distinguish between the State's duty to give the defendant notice at the pleading stage of his alleged status as a repeater, and the State's burden to prove the defendant's repeater status beyond a reasonable doubt at the sentencing stage. It asserts that the notice requirement articulated in § 973.12(1) and the requirements of due process do not mandate perfection in pleading prior convictions in the charging document.

¶ 19. The State also asserts that the court of appeals erred when it concluded that the repeater allegation used prior convictions that did not exist. According to the State, it did not rely on nonexistent convictions, but rather, it relied on existing convictions and merely committed an error when transcribing the date onto the complaint. The State seeks reversal of the court of appeals' decision and a reinstatement of the enhanced sentence originally imposed by the circuit court.

¶ 20. Stynes, on the other hand, relying primarily on *Wilks* and *Gerard,* embraces a bright-line rule. He argues that any charging document that contains a repeater allegation must contain an accurate and precise recitation of the date of the predicate convictions on which the repeater status is based. According to

344

Stynes, if the proof of the alleged prior convictions offered at sentencing differs from the date used in the complaint, even if by only one calendar day, the State has failed to satisfy the statutory and due process notice requirements.

¶ 21. We agree with the State that the error in this case did not render the repeater allegation ineffective. Here, the repeater allegation set forth in the complaint asserted that Stynes was "convicted of damage to property and disorderly conduct on 3/18/98 in Walworth County case 98CM118." We are unpersuaded by Stynes' assertion that Wisconsin case law supports a conclusion that the complaint failed to comply with the statutory and due process notice requirements.

¶ 22. In *Wilks,* the State filed a criminal complaint charging Wilks with misdemeanor retail theft. The complaint also contained a repeater allegation that listed a conviction for forgery on May 24, 1986. As it turned out, the May 24, 1986 conviction did not exist. After Wilks pled no contest to the retail theft charge, the circuit court permitted the State to use a July 3, 1985 forgery conviction to establish Wilks' repeater status at sentencing. The July 3, 1985 conviction had not been listed in the complaint.

¶ 23. The court of appeals reversed concluding that while the original complaint against Wilks provided notice of a May 24, 1986 forgery conviction, it did not provide notice of a July 3, 1985 forgery conviction. It determined that the amendment meaningfully changed the basis upon which Wilks assessed the extent of possible punishment at the time of the plea. *Wilks,* 165 Wis. 2d at 111.

¶ 24. Stynes argues for a bright-line rule pursuant to *Wilks.* But the *Wilks* court did not endorse such a rule. Citing to *Martin/Robles,* it embraced a standard

345

which bars post-plea amendments that meaningfully change the basis upon which the defendant assessed the extent of possible punishment at the time of the plea. *Id.* (citing *Martin/Robles,* 162 Wis. 2d 883).

¶ 25. The *Wilks* court observed that "the burden lies with the State to plead a repeater allegation with relative clarity and precision." *Id.* Nevertheless, the court noted that an absolute bar to post-plea amendments may lead to an absurd result. Acknowledging the need for some leeway, the court reiterated its standard: whether the amendment meaningfully changed the basis on which the defendant entered his plea.

¶ 26. While this case is similar to *Wilks* in that both cases involve the proper date of conviction, the cases are dissimilar in two key respects. First, the difference between the two dates in *Wilks* was over ten months which made the month, day, and year all incorrect, and the county of conviction was unknown. In contrast, the difference between the two dates in this case was one calendar day.

¶ 27. Second, there was some confusion in *Wilks* regarding whether the State, when it listed a conviction that occurred on May 24, 1986, was attempting to refer to the conviction that occurred on July 3, 1985. The State may have been alleging a wholly different offense, or even a nonexistent offense. Because of the confusion, the court concluded that Wilks was not fairly put on notice of the actual conviction.

¶ 28. In the case at bar, however, there is no question that the State was intending to refer to Stynes' convictions that occurred on March 17, 1998, convictions that actually existed. The fact that the convictions existed is apparent because the complaint described the offenses, stated the correct county of conviction, cited

the case number, and included a date of the convictions that was misstated by only one calendar day.

¶ 29. *Gerard* also does not require the standard proposed by Stynes. In *Gerard,* this court concluded that an information may be amended after the plea to correct a clerical error in the sentence portion of a repeater allegation if the amendment does not prejudice the defendant. *Gerard,* 189 Wis. 2d at 509. It determined that the misstatement did not affect the sufficiency of the notice given to the defendant.

¶ 30. Central to the *Gerard* court's analysis was its determination that the inclusion of the sentence portion was nonessential to the repeater allegation. It noted that there was no statutory requirement that the sentence portion of the penalty enhancement be specified in the charging document. According to the court, § 973.12(1) requires that the prior conviction must be alleged before the defendant pleads to the charges, but "neither statutory law nor case law requires the State to allege the sentence portion of the penalty enhancement in the information." *Id.* at 514. In contrast to *Gerard,* which involved an error in a nonessential sentence description contained in a repeater allegation, the case before us involves an error in a date of conviction, which is essential in describing the predicate convictions.

¶ 31. *Wilks* and *Gerard* also address the due process concerns that arise in connection with providing a defendant with notice of the predicate convictions. *Wilks* identified that the underlying policy of the notice required by Wis. Stat. § 973.12(1) is to satisfy due process by assuring that the defendant knows the extent of the potential punishment at the time of the plea. *Wilks,* 165 Wis. 2d at 110. *Gerard* reiterated that "[d]ue process requires the defendant to be informed of

his or her repeater status before pleading to the charges." *Gerard,* 189 Wis. 2d at 512, n.6.

¶ 32. This case involves an error that did not affect Stynes' ability to assess meaningfully the extent of the punishment at the time he pleaded to the charges. The error of one calendar day did not mislead or confuse Stynes. The complaint provided him with a description of the offenses, the county where the convictions occurred, the case number, and a date of the convictions that was off by one calendar day. In these circumstances, the complaint provided Stynes with the information necessary to identify which of his prior convictions would be used to establish his repeater status.

¶ 33. Although we disagree with the ultimate conclusion. of the court of appeals, we certainly agree with its sentiments and its urging of prosecutors and trial courts to adopt practices which, if followed, would have obviated the need for this appeal. As the court of appeals noted in *State v. Goldstein,* 182 Wis. 2d 251, 261, 513 N.W.2d 631 (Ct. App. 1994), correctly pleading and proving an enhanced sentence is not a particularly onerous or complicated prosecutorial task:

> We are aware of the heavy burdens and caseloads confronting prosecutors. However, correctly pleading and proving a prior conviction for purposes of obtaining an enhanced sentence does not strike us as a particularly onerous or complicated prosecutorial task.
>
> One simple and direct question to the defendant from either the prosecutor or the trial judge asking whether the defendant admits to the repeater allegation will, in most cases, resolve the issue. We suggest that trial judges include this question in their colloquy with the defendants at the plea hearing (if there is one) or, otherwise, at the time of sentencing. If the defendant

denies the allegation or stands mute, the State should provide evidence of the prior conviction via any of the alternative forms of proof contemplated under § 973.12(1), Stats.

. . . [W]e again in this case urge the adoption of these practices by trial courts and prosecutors. These procedures will reduce the number of postconviction challenges, including appeals, to enhanced sentences. More importantly, these procedures will assure that enhanced sentences are based on convictions that actually exist and which otherwise qualify under the repeater statute.

¶ 34. In sum, because the complaint, in referring to the predicate convictions, described the offenses, stated the correct county where the convictions occurred, cited the case number, and misstated the date of the convictions by only one calendar day, we determine that the misstatement did not meaningfully change the basis on which Stynes entered his plea. We therefore conclude that the complaint provided Stynes with the required notice of the predicate convictions on which his repeater status was based.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 35. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* It is difficult to conclude that the defendant here was not provided with sufficient notice of the predicate convictions on which his repeater status was based when the complaint misstated the date of one of the convictions by a single day. Thus I feel compelled to join the mandate.

¶ 36. I write separately because I believe the majority here misses the forest for a single tree to the detriment of the citizens of Wisconsin.

¶ 37. First, this court should adopt for future cases a bright-line rule that Wis. Stat. § 973.12(1) requires any charging document containing a repeater allegation to accurately and precisely recite all predicate convictions, including the offense of conviction, whether the offense was a felony or misdemeanor, and the date of the conviction. Failure to do so defeats the State's ability to convict someone as a repeater under Wis. Stat. § 939.62. Such a rule would cut down on useless litigation and ensure that enhanced repeater sentences are based only on qualifying convictions.

¶ 38. For nearly a decade Wisconsin courts have made it clear that pleading and proving the repeater allegation is neither onerous nor complicated and have urged the State to adopt practices that will result in the accurate recitation of predicate convictions.[1] For more than a decade, however, cases have arisen in which the facts of predicate convictions are not accurately recited.[2] Merely urging the State to do better is futile without a sanction for failure.

¶ 39. Instead of holding the State accountable by adopting a bright-line rule, the majority opinion concludes that Wis. Stat. § 973.12(1) and due process are satisfied if the State comes close enough. The majority opinion does not define close enough, leaving future

---

[1] *See State v. Goldstein,* 182 Wis. 2d 251, 261, 513 N.W.2d 631 (Ct. App. 1994).

[2] *See, e.g., State v. Gerard,* 189 Wis. 2d 505, 525 N.W.2d 718 (1995); *State v. Martin/Robles,* 162 Wis. 2d 883, 470 N.W.2d 900 (1991); *State v. Wilks,* 165 Wis. 2d 102, 477 N.W.2d 632 (Ct. App. 1991).

courts to grapple with the question of how close is close enough under the *"relative* clarity and precision" standard.[3]

¶ 40. Under the majority opinion's standard, a defendant is encouraged to bring a post-conviction challenge every time the State fails to recite accurately a predicate offense, to determine whether the State's recitation of a predicate offense was close enough. The circuit court's determination will likely then be appealed at least once as the only parameters set by this court are that one calendar day is close enough while 10 months and three weeks is not close enough.[4] The majority opinion's failure to adopt a bright-line rule is thus expensive, for defense counsel, for district attorneys' offices, for the department of justice, and for the courts. The costs to the legal system of hearing and deciding these appeals clearly exceeds the cost to the State to adopt procedures ensuring that it correctly pleads a prior conviction for purposes of obtaining an enhanced sentence. Why not staple a certified copy (or even a non-certified copy) of all prior judgments of conviction to the criminal complaint or at least proof-read criminal complaints?

¶ 41. Second, the majority opinion's failure to adopt a bright-line rule is yet another example of the lower burden this court places on the State when depriving a person of his or her liberty than it places on private litigants in civil actions.[5] A plaintiff's error in serving a summons and complaint on the wrong city agency office after apparently being misdirected by the

---

[3] Majority op., ¶ 25 (emphasis added).

[4] *Wilks,* 165 Wis. 2d at 111.

[5] *See State v. Jennings,* 2003 WI 10, ¶ 38, 259 Wis. 2d 523, 657 N.W.2d 393 (Abrahamson, C.J., dissenting).

correct city agency, and despite the fact that the correct city agency subsequently received the summons and complaint, terminates his cause of action.[6] The State's repeated inability to accurately inform a defendant of the convictions on which his repeater status was based, however, is forgiven as close enough for government work.

¶ 42. According to this court, Wis. Stat. § 801.11(4), governing service of process in civil actions against bodies politic, demands strict adherence but Wis. Stat. § 973.12(1), governing the requisite notice for criminal defendants being charged as repeat offenders, permits leniency. This court's jurisprudence thus upsets a bedrock principle in our Constitution that because "the accused during a criminal prosecution has at stake an interest of immense importance" the burden on the State in a criminal prosecution is the highest burden required of any litigant and the margin of error allowed is the lowest.[7]

¶ 43. Finally, I cannot let pass what appears to me an additional waste of resources: charging the defendant in this case as a repeater so that his sentence for four misdemeanors is increased from two years to 12 years.

¶ 44. I do not condone the defendant's actions here or in any of his prior convictions. All citizens must abide by the law and the failure to do so must result in punishment. The four misdemeanors identified in the complaint here, however, as well as the prior misdemeanors, are "minor" when compared to the broad spectrum of criminal offenses. The complaint alleged

---

[6] *Hagen v. City of Milwaukee Employee's Ret. Sys. Annuity Pension Bd.*, 2003 WI 56, 262 Wis. 2d 113, 663 N.W.2d 268.

[7] *In re Winship*, 397 U.S. 358, 363–64 (1970).

two counts of disorderly conduct and two counts of resisting a police officer and included a repeater allegation based on damage to property and bail jumping convictions; the present charges collectively carry a maximum total penalty of 24 months—well short of the 12–year maximum sentence the defendant received as a repeater.

¶ 45. What is apparent in the present case is that the defendant's behavior is directly linked to drug and alcohol abuse. It appears to me that the State is using an extended prison term to mask the symptoms of substance abuse instead of facing up to the role that alcohol and drug abuse plays in the defendant's criminal conduct. Not all people are amenable to treatment and not all treatment programs prove successful. Prison, however, is expensive, costing the State approximately $25,000 per year per inmate. Is it wise public policy to impose an extra 10–year prison sentence at a cost to the taxpayers of about $250,000 as a substitute to providing him treatment in the community he so desperately needs?[8]

¶ 46. For the foregoing reasons, I write separately.

[8] The nationwide average cost of imprisoning an addict is $25,900 per year, while treatment costs only $4,400–$6,800 per year. Physician Leadership on Nat'l Drug Policy, *Addiction & Addiction Treatment* (March 1998), at http://center.butler.brown.edu/plndp/Resources/Research_Reports/Mar__98_Report/mar__98_report.html.