STATE of Wisconsin,
Plaintiff-Respondent,

v.

Jamale A. BONDS,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP948–CR. Oral argument April 28, 2006.
—Decided June 30, 2006.*

2006 WI 83

(Also reported in 717 N.W.2d 133.)

345

ABRAHAMSON, C.J., concurs.
BRADLEY and BUTLER, JR., J.J., join.
CROOKS, J., concurs in part, dissents in part.
WILCOX and PROSSER, J.J., join.

For the defendant-appellant-petitioner, there were briefs by *Diana M. Felsmann,* and oral argument by *Jeremy C. Perri,* assistant state public defenders.

For the plaintiff-respondent, the cause was argued by *Aaron R. O'Neil,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review the State's post-conviction amendment to a criminal complaint for battery in violation of Wis. Stat. § 940.19(1) (2003–04),[1] as the amendment affects the basis for the allegation that Jamale Bonds is an habitual criminal. In regard to habitual criminality, the complaint alleged three misdemeanor convictions. The date of the prior convictions was misstated in the body of the complaint, but certified copies of the judgments of conviction were attached to the copy of the complaint that was given to Bonds. Bonds pled not guilty and was convicted by a jury. At sentencing, he did not admit the allegation of habitual criminality. The State then changed the factual basis for its allegation that Bonds was a repeater and sought to prove a prior felony forgery conviction. The State submitted a Consolidated Court Automation Programs (CCAP) report as proof of that conviction. Bonds objected to amending the basis on which the State sought to prove habitual criminality and also asserted that the proof the State had submitted was insufficient to prove habitual criminality beyond a reasonable doubt. The circuit court permitted the amendment, accepted the CCAP report as sufficient

---

[1] All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

proof of habitual criminality, and sentenced Bonds as a repeater. Bonds claims it was error to do so.

¶ 2. Four members of the court conclude that with sufficient proof, the State's post-conviction amendment of the basis for proving habitual criminality would have been permissible for two reasons: (1) The complaint satisfied the requirements of Wis. Stat. § 973.12 and of due process because Bonds had notice that he was being charged as an habitual criminal and of the potential maximum sentence he faced before he pled; and (2) Bonds was not prejudiced in making an intelligent plea as a result of the State's shift to a different prior conviction as the factual basis for its repeater allegation.[2] However, a different majority of the court also concludes that the State's use of a CCAP report as evidence of Bonds's conviction does not constitute prima facie proof of that conviction and that Bonds did not waive his right to object to the State's use of the CCAP report.[3] Accordingly, the court of appeals decision is reversed and the matter is remanded to the circuit court to vacate the enhancer portion of Bonds's sentence.

## I. BACKGROUND

¶ 3. The relevant facts are undisputed. Jamale Bonds was charged with battery as an habitual crimi

---

[2] Justices Jon P. Wilcox, N. Patrick Crooks, David T. Prosser and Patience Drake Roggensack form the majority for permitting a post-conviction amendment of the factual allegation in the complaint upon which the State alleged Bonds was an habitual criminal.

[3] Chief Justice Shirley S. Abrahamson and Justices Ann Walsh Bradley, Patience Drake Roggensack and Louis B. Butler, Jr. form the majority for concluding that a CCAP report is not sufficient to constitute prima facie proof of Bonds's prior conviction of a felony.

nal, in violation of Wis. Stat. §§ 940.19 and 939.62. In the criminal complaint, the State alleged three prior misdemeanor convictions as the basis for the habitual criminality allegation:

> [T]he defendant is a repeater as defined in Wisconsin Statutes Section 939.62, in that the defendant was convicted of . . . (three misdemeanors) during the five year period immediately preceding the commission of the crime charged in this complaint, which conviction(s) remain[] of record and unreversed. If this is found to be the case, the maximum term of imprisonment for this crime may be increased to not more than 2 years, exclusive of other enhanced penalties charged herein.

*Criminal Complaint* 1 (Milwaukee County Cir. Ct. July 29, 2003). The three prior misdemeanor convictions were described individually by: the offense committed, the statute that was contravened, the county of conviction and the case number for each matter. The date of the convictions was misstated in the body of the complaint; however, certified copies of the judgments of conviction were attached to the copy of the complaint that was given to Bonds.

¶ 4. Bonds pled not guilty, went to trial, and was convicted by a jury. At sentencing, the State recommended that Bonds be sentenced to the maximum term for battery with an habitual criminality enhancer: 18 months initial confinement and six months extended supervision. In support of its sentencing request, the State asked that the habitual criminality finding be based on a 1998 felony forgery conviction in lieu of the misdemeanor convictions that were alleged in the complaint. Bonds did not admit to a prior conviction so the State presented a CCAP report that indicated he was convicted of felony forgery one day after the misdemeanor convictions set out in the complaint. The sen-

tencing transcript provides the following communication between the sentencing judge and the prosecutor about the amendment of the basis for habitual criminality that was alleged in the complaint and the calculations that bore on Bonds's repeater status:

> MR. RESAR: . . . I have copies of all the circuit court access records. I would ask specifically, either through these records or through the defendant's own admission that a finding be made that the defendant was convicted of a felony forgery and that that conviction took place on April 16th of 1998.

> THE COURT: That is the day after he was found guilty of the battery charge and bail jumping charge, misdemeanor charges. Right?

> MR. RESAR: That is accurate. But I just, I think that using the felony is a little cleaner and doesn't rely on the older misdemeanor that we need to piece together confinement time. However, we still do need to rely on confinement time. The State is asking the court to rely on that. As the defendant was charged in this case on July 29th, 2003. So, we need at least 5 months at that point. There is approximately five years and five months between the time the defendant was charged and the time the defendant was convicted of the felony forgery and that time, excludes that five year period, excludes any time defendant spent in confinement. There are records from the Milwaukee County Jail which have been shown to counsel, which establish that the de-

fendant was in the custody of the Milwaukee County Jail between July 26th in 1999 and May 8th of 2000. That he was serving a sentence on those cases the court refers to.

So, with that we know the defendant was in custody for nearly ten months, far surpassing the five months that would be required in order to establish habitual criminality enhancer in this case. With that, I would ask that the court make those findings, either through those documents or through the defendant's own admission to the validity of the same.

¶ 5. Defense counsel objected to the State's amendment and asked the court to find that the habitual criminality allegation was defective for two reasons: (1) the felony conviction was not alleged in the complaint; and (2) the State had not proved the felony conviction beyond a reasonable doubt. The State responded that all that was required to advance on the habitual criminality enhancer was to allege prior to a plea that a person was an habitual criminal. The State contended that the complaint was not required to specifically allege which conviction or convictions formed the basis for the habitual criminality allegation. Additionally, the State contended that CCAP reports are sufficient proof.

¶ 6. CCAP is a case management system provided by Wisconsin Circuit Court Access program (WCCA). It provides public access online to reports of activity in Wisconsin circuit courts for those counties that use CCAP. Circuit court employees enter all CCAP data in the county where the case files are located, and the information feeds into the statewide access system. How-

ever, CCAP is a voluntary program, and only counties or divisions within a county that elect to use CCAP's case management system generate CCAP reports.

¶ 7. The WCCA website, through which all CCAP reports can be accessed by the public, asks all users of the system to read and accept the following agreement:

WCCA is not the official Judgment and Lien Docket. The official Judgment and Lien Docket is located in each county's Clerk of Circuit Court Office.

The data available in the CCAP database is limited by:

1. Some counties currently use CCAP for selected case types. Portage has data only for Probate cases.

2. Counties that are on CCAP began using it at different times and made independent decisions about the "backloading" of pre-CCAP cases.

3. All the data in the CCAP database is entered in the individual counties where the case files are located. Case information is updated hourly unless CCAP is performing periodic maintenance or experiencing technical problems.

If you believe any of the data contained in this database is inaccurate, please contact the circuit court where the original record was created and filed. CCAP provides no warranties insuring the accuracy of the information contained in records available on WCCA, or that electronic mail sent via WCCA is delivered to, accessed by, or read by its intended recipient.

Please indicate that you have read the above and agree to the use of WCCA subject to the above terms, and understand the limitations of the CCAP database.

http://wcca.wicourts.gov/index.xsl (last visited June 24, 2006).

¶ 8. The circuit court concluded that the criminal complaint gave Bonds notice that the State intended to ask the court to find that he is an habitual criminal because it alleged three prior misdemeanor convictions. The court also concluded that the shift to a felony conviction as the grounds for a finding of habitual criminality did not prejudice him. The court concluded that it could take judicial notice of the CCAP report of Bonds's conviction for felony forgery.[4]

¶ 9. The circuit court sentenced Bonds to 18 months of confinement and six months of extended supervision. At sentencing, the judge explained that the application of the repeater enhancer was supported by Bonds's forgery conviction. He told Bonds that although the forgery conviction occurred more than five years before the battery for which Bonds was being sentenced, the time Bonds was confined for the forgery conviction had to be subtracted from the time between the forgery conviction and the current charge of battery. Doing so placed the forgery conviction within the applicable five-year period according to the provisions of Wis. Stat. § 939.62(2).

¶ 10. Bonds filed a motion for post-conviction relief pursuant to Wis. Stat. §§ 809.30 and 974.02, arguing that the court had improperly determined that he was an habitual criminal and requesting that his sentence be changed to nine months, the maximum penalty for a Wis. Stat. § 940.19(1) battery conviction. Bonds argued that he had been denied notice of the habitual criminality allegation because the State had not alleged the forgery conviction as its basis before his

---

[4] We note that for the purposes of subtracting Bonds's time in confinement from the date of conviction for the forgery, the State submitted Milwaukee County Jail records. The use of those records is not in dispute.

plea. He also refined his argument that the State had not proved habitual criminality beyond a reasonable doubt, by asserting that the CCAP report was unreliable and insufficient to prove habitual criminality status. The circuit court denied his motion.

¶ 11. The court of appeals adopted the circuit court's reasoning as its own. We review the court of appeals decision.

## II. DISCUSSION

### A. Standard of Review

¶ 12. When we review the application of a statute to a set of facts to determine whether a penalty enhancer is valid, we are presented with a question of law that we review independently, without deference to previous court decisions. *State ex rel. Bingen v. Bzdusek,* 2002 WI App 210, ¶ 8, 257 Wis. 2d 193, 650 N.W.2d 894; *see also State v. Koeppen,* 195 Wis. 2d 117, 126, 536 N.W.2d 386 (Ct. App. 1995). When we determine whether a defendant has received notice that the State intends to seek increased imprisonment, we independently review the notice that was given to determine whether it satisfies due process. *State v. Stynes,* 2003 WI 65, ¶ 11, 262 Wis. 2d 335, 665 N.W.2d 115.

### B. Increased Penalty for Habitual Criminality

¶ 13. Wisconsin Stat. § 939.62 allows increased penalties to be imposed on repeat criminals at the time of sentencing. Section 939.62 states in pertinent part:

> (1) If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed, except for an

escape under s. 946.42 or a failure to report under s. 946.425, the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

(a) A maximum term of imprisonment of one year or less may be increased to not more than 2 years.

. . .

(2) The actor is a repeater if the actor was convicted of a felony during the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced, or if the actor was convicted of a misdemeanor on 3 separate occasions during that same period, which convictions remain of record and unreversed. . . . In computing the preceding 5-year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.

¶ 14. Wisconsin Stat. § 973.12 sets forth the statutory requirements for alleging and applying the repeater enhancer. It states, in pertinent part:

(1) Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea. The court may, upon motion of the district attorney, grant a reasonable time to investigate possible prior convictions before accepting a plea. If the prior convictions are admitted by the defendant or proved by the state, he or she shall be subject to sentence under s. 939.62 unless he or she establishes that he or she was pardoned on grounds of innocence for any crime necessary to constitute him or her a repeater or a persistent repeater. An official report of the F.B.I. or any governmental agency of the United States or of this or any

other state shall be prima facie evidence of any conviction or sentence therein reported. Any sentence so reported shall be deemed prima facie to have been fully served in actual confinement or to have been served for such period of time as is shown or is consistent with the report.

The proper application of § 973.12 is at the center of Bonds's challenge to his sentence as a repeater.

### 1. The parties' positions

¶ 15. Bonds contends that the State improperly amended the complaint when it changed the factual basis of the repeater allegation from three misdemeanors to a felony forgery conviction. Bonds supports this position with the following arguments: (1) Wis. Stat. § 973.12(1) unambiguously requires that prior convictions be alleged at or before the acceptance of any plea; (2) *State v. Martin,* 162 Wis. 2d 883, 907, 470 N.W.2d 900 (1991), held that a repeater allegation cannot be added after a plea; and (3) even if the State was able to amend the complaint regarding the basis for the repeater allegation after a plea, Bonds was prejudiced and therefore, the State may not amend here.

¶ 16. The State, on the other hand, argues that Wis. Stat. § 973.12 does not bar all post-plea amendments of allegations of habitual criminality. The State supports its position with the following arguments: (1) modifications are permissible if the complaint gives the defendant notice of the potential maximum penalty to which the defendant could be subjected when pleading, such that the defendant would not be prejudiced in deciding how to plead; (2) the complaint gave Bonds adequate notice of the maximum penalty he faced at the

time of his plea; and (3) Bonds was not prejudiced by the State's change in the factual basis for the repeater allegation.

2. Interpretation of Wis. Stat. § 973.12

¶ 17. Although no amended complaint was actually filed in the circuit court, Bonds characterized the State's request to change the basis for proving habitual criminality as an untimely amendment of the complaint. Therefore, in order to examine the requirements of Wis. Stat. § 973.12 and how an amendment of the basis for habitual criminality set out in the complaint may affect the statute's requirements, we begin with *Whitaker v. State,* 83 Wis. 2d 368, 265 N.W.2d 575 (1978), which discussed amendments to charging documents in general. *Id.* at 374. *Whitaker* did not concern a repeater enhancer, but rather it addressed an initial charge of party to the crime of theft that the State amended to robbery, after Whitaker's arraignment and plea of not guilty. Subsequent to the amendment, Whitaker was again arraigned, this time on the amended information, and a new plea was taken. *Id.* at 370–71. We interpreted Wis. Stat. § 971.29[5] in reaching our conclusion that there was no statutory bar to amending an information with leave of the court after

[5] The version of the statute interpreted in *Whitaker v. State,* 83 Wis. 2d 368, 265 N.W.2d 575 (1978), is identical to the 2003–04 version. Wisconsin Stat. § 971.29 provides:

(1) A complaint or information may be amended at any time prior to arraignment without leave of the court.

(2) At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

arraignment so long as there was no prejudice to the defendant. *Id.* at 374. We reasoned that the purpose of an information is to "inform the defendant of the charges against him," and that "[n]otice is the key factor." *Id.* at 373 (citing *La Fond v. State,* 37 Wis. 2d 137, 144, 154 N.W.2d 304 (1967) (Heffernan, J., dissenting) and the Wisconsin Constitution, Art. I, sec. 7: "In all criminal prosecutions the accused shall enjoy the right . . . to demand the nature and cause of the accusation against him."). We explained that an amendment of an information before trial would not be prejudicial if a defendant's right to notice, right to a speedy trial, and right to prepare and present a defense to the criminal charges were not affected. *Whitaker,* 83 Wis. 2d at 374.

¶ 18. In recent years, we have had occasion to determine the validity of various post-plea amendments relating to habitual criminality. Those cases guide our analysis of whether the State's amendment in this case was permissible under Wis. Stat. § 973.12 and constitutional due process requirements.

¶ 19. In *Martin,* we consolidated two cases that raised the same issue. Each defendant challenged the State's assertion of habitual criminality after a plea of not guilty to the charges at arraignment. We interpreted Wis. Stat. § 973.12(1) as prohibiting an amendment that alleged that the defendant was an habitual

(3) Upon allowing an amendment to the complaint or indictment or information, the court may direct other amendments thereby rendered necessary and may proceed with or postpone the trial.

Because the statute refers to both complaints and informations, and because informations are only required in felony cases, we conclude that the reasoning of *Whitaker* and all subsequent case law regarding the amendment of an information, can be analogously applied to all charging documents.

criminal where a defendant has been arraigned and has pled not guilty to an information that made no allegation that the defendant was a repeater. *Martin,* 162 Wis. 2d at 900. We reviewed the legislative history[6] and concluded that the language of the statute, coupled with that history, made clear that:

> [T]he legislature has established the time of arraignment and of *any* plea acceptance as the cut-off point after which time a defendant can no longer face exposure to repeater enhancement for the crime set forth in the charging document and pleaded to by the defendant at arraignment.

*Id.* (emphasis in original).

---

[6] We briefly list our conclusions from *State v. Martin,* 162 Wis. 2d 883, 470 N.W.2d 900 (1991), regarding the history of Wis. Stat. § 973.12:

(1) Initially, a repeater allegation was not considered essential to the substantive offense charged; rather, it was considered essential to "the information in order to secure the punishment provided for in case of a second offense and [repeater status had to] be alleged in the information." *Id.* at 897 (citation omitted).

(2) Revisions to the statute in 1919 permitted investigation of a defendant's criminal record after conviction, even when the charging document had not alleged the defendant was a repeater. *Id.* at 898. At that time, the statute did not require notice to the defendant at arraignment. *Id.*

(3) The 1949 revisions to § 973.12 permitted the allegation of repeater status at any time before the execution of a sentence. *Id.*

(4) In 1965, § 973.12 was again amended, wherein the legislature eliminated "all references to a defendant's ability to demand a jury trial" on whether prior convictions existed. *Id.* at 899. It also eliminated the language that allowed a court to make the repeater allegation at any time before sentencing; it required that the initial repeater allegations be made "before or at arraignment, and before acceptance of any plea." *Id.* at 899–900.

¶ 20. In weighing the meaning of the statute against the facts of the consolidated cases, we relied in part on the reasoning of a prior decision, *Block v. State,* 41 Wis. 2d 205, 210, 163 N.W.2d 196 (1968), in which we analyzed the 1965 amendment to the repeater statute:

> Being a repeater is not a crime but may enhance the punishment of the crime for which the repeater is convicted. The allegation of recidivism is put in the information in order to meet the due-process requirements of a fair trial. When the defendant is *asked to plead,* he is entitled to know the extent of his punishment of the alleged crime, which he cannot know if he is not then informed that his prior convictions may be used to enhance the punishment.

*Martin,* 162 Wis. 2d at 900–01 (quoting *Block,* 41 Wis. 2d at 210 (emphasis in *Block*)).

¶ 21. *Martin* addressed when the initial allegation of habitual criminality must be made. Here, there is no dispute that Bonds was alleged to be a repeater in the initial criminal complaint, in compliance with *Martin.* The question we must decide is when can an amendment of the initial basis for proving habitual criminality that was alleged in the complaint be made. Subsequent to *Martin,* we have allowed some post-plea amendments of initial repeater allegations. *See State v. Gerard,* 189 Wis. 2d 505, 517–19, 525 N.W.2d 718 (1995); *see also Stynes,* 262 Wis. 2d 335, ¶¶ 32, 34; *State v. Campbell,* 201 Wis. 2d 783, 792, 549 N.W.2d 501 (Ct. App. 1996).

¶ 22. In *Gerard,* we held that a criminal information that alleged habitual criminality could be amended, after the defendant had pled not guilty to the charges, but prior to the start of trial, to correct the number of years by which the defendant's sentence could be enhanced due to his status as a repeater.

361

*Gerard,* 189 Wis. 2d at 507–09. We distinguished the facts of that case from those of *Martin,* noting that the complaint and information relating to Gerard's charges correctly alleged his repeater status and that a mere scrivener's error misstating the potential length of enhancement due to the penalty enhancer did not affect the sufficiency of the notice given to Gerard. *Id.* at 512, 517–19. We rejected Gerard's argument that he was prejudiced because at the time of arraignment, due to a clerical error, he thought that he was subject to three, rather than six, additional years in prison if convicted on one of the underlying counts. *Id.* at 516–18.

¶ 23. We were persuaded by three factual aspects of the case that caused us to conclude Gerard suffered no prejudice: (1) Gerard discovered the error in the information and the complaint and brought it to the court's attention, so that he was fully aware of the actual sentence enhancement he faced, yet he failed to move to withdraw his plea; (2) Gerard did not assert that he was prejudiced by the court's decision to grant the State's motion to amend; (3) Gerard discovered the clerical error at the very early stages of the criminal proceedings, nine months before his trial. *Id.* at 518–19.

¶ 24. In *Stynes,* we held that a complaint that misstated by one day the date of one of the defendant's convictions provided adequate notice of convictions on which his repeater status was based, as it included descriptions of the offenses, stated the correct county in which the convictions occurred, and cited the case numbers for the convictions. *Stynes,* 262 Wis. 2d 335, ¶ 32. We determined that the error in the date "did not meaningfully change the basis" for Stynes's plea of not guilty. *Id.,* ¶ 34. Accordingly, we held that Stynes was not prejudiced because the amendment gave him notice of the prior convictions on which the repeater allega-

tions were based, and therefore, we permitted an amendment of the date of conviction after Stynes pled. *Id.*

¶ 25. In *Stynes,* we also reviewed the court of appeals decision in *State v. Wilks,* 165 Wis. 2d 102, 477 N.W.2d 632 (Ct. App. 1991). *Wilks* held that where the misstatement of a date of a prior conviction was significant enough to call into question whether the State was relying on a prior conviction that actually existed, the error could not be corrected without prejudice to a defendant who had pled no contest.[7] *See Stynes,* 262 Wis. 2d 335, ¶¶ 22–27. We distinguished *Wilks* in *Stynes* because the information in *Stynes* misstated the date of one of the prior convictions by one day and there was no confusion about whether the alleged convictions actually existed. *Id.,* ¶ 28.

¶ 26. Further, in *Stynes* we relied on *Gerard*'s reasoning that a statement of the number of years by which the sentence could be enhanced was not essential to a repeater allegation because there was no statutory requirement that the number of years by which the sentence could be enhanced be specified in the charging document. *Id.,* ¶ 30. We summarized the impact of *Wilks* and *Gerard* as follows:

> *Wilks* identified that the underlying policy of the notice required by Wis. Stat. § 973.12(1) is to satisfy due process by assuring that the defendant knows the extent of the potential punishment at the time of the plea. *Gerard* reiterated that "[d]ue process requires the defendant to be informed of his or her repeater status before pleading to the charges."

---

[7] The day, month and year were incorrectly stated in the criminal complaint and no county of conviction was mentioned. *State v. Wilks,* 165 Wis. 2d 102, 105 n.3, 106, 477 N.W.2d 632 (Ct. App. 1991).

*Id.,* ¶ 31 (citations omitted); *see also State v. Fields,* 2001 WI App 297, ¶¶ 7–14, 249 Wis. 2d 292, 638 N.W.2d 897 (analyzing *Martin* and *Gerard* to conclude that the State's pre-plea submission of a certified copy of defendant's prior convictions constituted an amendment to the information, thereby curing the information's defects, because the defendant had adequate notice that he was being charged as a repeater).

¶ 27. In *Campbell,* the court of appeals held that a post-arraignment amendment to an information, to add a fourth misdemeanor to three initially alleged as the basis for the repeater enhancer, did not violate Wis. Stat. § 973.12. *Campbell,* 201 Wis. 2d at 792. Campbell argued that he was prejudiced by the amendment because there was a possibility that one of his prior misdemeanors would be reversed on appeal. *Id.* at 792–93. Therefore, he argued, in the event of such a reversal, the amendment to add a fourth misdemeanor affected his potential punishment because without it, there would be only two valid misdemeanors and the State could not prove repeater status. *Id.* Consequently, he argued, the amendment meaningfully changed the basis of his not guilty plea and should not have been permitted. *Id.* at 793.

¶ 28. The court of appeals responded to this theory by concluding that even if the court were to assume that a reversed prior conviction would change Campbell's status as a repeater under the three original misdemeanor charges, the amendment did not prejudice his ability to assess the potential maximum punishment he faced. *Id.* The court of appeals explained that the prejudice Campbell described is what he perceived to be the potential adverse effect of the amendment on his chances of defending against the penalty enhancer, but that did not affect his ability to evaluate the potential maximum

364

punishment to which he could be subjected, either at arraignment or at the plea hearing.[8] *Id.*

¶ 29. *Campbell* relied on the reasoning of *Martin* and *Gerard* that the sufficiency of notice to a defendant of the potential maximum punishment he or she faces as a result of a repeater enhancer is the keystone to the permissibility of post-arraignment amendments regarding repeater allegations. *Id.* at 791–92. Since Campbell had notice of his potential maximum punishment for the crime and the penalty enhancer at the time of his plea, the amendment did not affect the sufficiency of the notice he had been given or violate Wis. Stat. § 973.12. *Id.* at 792.

¶ 30. When considered together, this precedent establishes the following principles:

> (1) The purpose of the allegations of repeater status in a charging document is to provide the defendant with sufficient notice of the potential maximum penalty he faces in order that the defendant may make an informed plea. *Gerard,* 189 Wis. 2d at 512 n.6.; *Martin,* 162 Wis. 2d at 900–01; *Whitaker,* 83 Wis. 2d at 373.

---

[8] We recognize that *Campbell* also involved a plea agreement made after Campbell's original arraignment. *State v. Campbell,* 201 Wis. 2d 783, 786–87, 549 N.W.2d 501 (Ct. App. 1996). In the original arraignment, Campbell stood mute and the court entered not guilty pleas. *Id.* at 786. Several weeks later, concurrent with the State's amendment of the complaint, Campbell reached a plea agreement in which he pled no contest to the underlying charges as a repeater. *Id.* at 786–87. Campbell challenged the amendment because it was made post-arraignment. *Id.* at 792. The court in *Campbell* separately analyzed the effect of the post-arraignment amendment on his original not guilty plea, which is the part of *Campbell* that is applicable to the issues raised by Bonds, and on Campbell's plea agreement. *Id.* at 792–94.

(2) If there has been no repeater allegation made prior to the court's acceptance of a plea, and the defendant does not re-plead after the charging document has been amended, sentence enhancement is not permissible upon conviction. *Gerard,* 189 Wis. 2d at 513–14; *Martin,* 162 Wis. 2d at 902–03; *Campbell,* 201 Wis. 2d at 791–92.

(3) With leave of court, and after a plea has been accepted, charging documents that were sufficient before the plea was accepted may be amended with regard to the initial allegations concerning a defendant's repeater status so long as the defendant is not prejudiced by the amendment.[9] *Stynes,* 262 Wis. 2d 335, ¶¶ 31, 34; *Gerard,* 189 Wis. 2d at 509; *Campbell,* 201 Wis. 2d at 793.

(4) When a post-plea amendment to allegations earlier made concerning a defendant's repeater status does not compromise the sufficiency of notice of the potential maximum sentence a defendant faces, no prejudice occurs. *Stynes,* 262 Wis. 2d 335, ¶¶ 31–32; *Gerard,* 189 Wis. 2d at 516; *Campbell,* 201 Wis. 2d at 793; *Wilks,* 165 Wis. 2d at 110.

## C. Bonds's Claim of Prejudice

¶ 31. It is the State's burden to prove that Bonds was not prejudiced and Wis. Stat. § 973.12(1) was satisfied through notice of sufficient allegations of the

---

[9] In order to give sufficient notice of the potential maximum penalty that a defendant faces due to allegations of habitual criminality, a complaint must specify the date or dates of conviction, the substantive crime or crimes of which the defendant was convicted, and whether each conviction was a felony or a misdemeanor. *State v. Stynes,* 2003 WI 65, ¶ 15, 262 Wis. 2d 335, 665 N.W.2d 115 (citing *State v. Gerard,* 189 Wis. 2d 505, 515–16, 525 N.W.2d 718 (1995)).

basis for charging habitual criminality. *Stynes,* 262 Wis. 2d 335, ¶ 10. When we apply the principles from *Stynes, Gerard, Campbell* and *Wilks* to the facts before us, we conclude that Bonds was not prejudiced by the State's post-conviction amendment of the original allegations in the complaint on which the State based its assertion of habitual criminality. First, there is no dispute that Bonds's prior convictions made him a repeater. Second, there is no dispute that Bonds was alleged to be a repeater before he pled, in compliance with § 973.12. The complaint that was given to him before he pled to the battery charge attached, and incorporated by reference, certified copies of the judgments of conviction for three prior misdemeanors. The specific crime that was committed, the statutory section that was violated, the case number for each matter, and the county of conviction were all set out in the complaint for each misdemeanor. Third, Bonds suffered no prejudice when at sentencing, after he was convicted by a jury, the State amended the factual basis to a felony conviction that was sufficient to satisfy Wis. Stat. § 939.62, rather than relying on the three misdemeanor convictions listed in the criminal complaint. The amendment did not prevent Bonds from meaningfully assessing the potential maximum penalty to which he could be subjected. Under § 939.62(1)(a), whether the State proved his repeater status by three misdemeanor convictions or by one felony conviction, Bonds's potential maximum penalty was the same. This is so because a battery conviction under Wis. Stat. § 940.19(1) is a Class A misdemeanor that has maximum imprisonment of nine months. Wis. Stat. § 939.51(3)(a). Therefore, even with the repeater enhancement, Bond's maximum term of imprisonment for the battery conviction could not be increased to more than two years,

regardless of whether the State relied on three misdemeanors or one felony.[10]

¶ 32. We also are unpersuaded by Bonds's argument that he pled not guilty because he believed that he would not be sentenced as a repeater as the actual dates of the misdemeanor convictions occurred more than five years before he was charged with battery. Any misstatement of dates listed in the body of the complaint was cured by the attachment of the certified copies of the judgments of conviction that were given to Bonds with the complaint. As explained in *Fields,* 249 Wis. 2d 292, ¶ 8, providing a defendant with a certified copy of his prior convictions constitutes an amendment to the charging document that cures prior defects in it. Bonds acknowledges that he was incarcerated for ten months for the forgery conviction. This period of time is not counted in the five-year period of time when assessing whether convictions fall within the requisite timeframe of five years. Wis. Stat. § 939.62(2). In addition, the "prejudice" that Bonds complains of is the adverse effect on a potential defense to the repeater allegation. *Campbell* concludes this is insufficient to set aside an amendment to a repeater allegation because it does not affect a defendant's ability to assess the potential maximum sentence to which he may be subjected. *Campbell,* 201 Wis. 2d at 793. We agree with *Campbell.*

D. Evidence of Habitual Criminality

¶ 33. The second issue we address is whether the CCAP report offered by the State at sentencing is

---

[10] Wisconsin Stat. § 939.62(1)(a) provides: "A maximum term of imprisonment of one year or less may be increased to not more than 2 years."

sufficient to constitute prima facie proof that Bonds is an habitual criminal. The parties agree that the State has the burden to prove Bonds's repeater status beyond a reasonable doubt.

1. The parties' arguments

¶ 34. Bonds argues that the State failed to meet its burden because CCAP reports are unreliable as they do not even purport to accurately reflect official court records. He reminds us that the CCAP user agreement explicitly states that CCAP reports should not be relied on as accurately representing the information provided. Furthermore, Bonds argues that CCAP records do not constitute an "official report" of a government agency that would constitute prima facie evidence pursuant to the language of Wis. Stat. § 973.12(1). Therefore, even absent an objection on his part to the evidence offered, the State did not meet its burden to prove a qualifying conviction.

¶ 35. The State, on the other hand, argues that CCAP records should be considered official government reports pursuant to Wis. Stat. § 973.12(1) and the reasoning of *State v. Farr,* 119 Wis. 2d 651, 350 N.W.2d 640 (1984), in which we suggested that a presentence report "may" constitute an "official report" where it contains the date of conviction for the previous offense. *Id.* at 658. The State also contends that even if there are problems with using a CCAP report, Bonds waived his right to challenge the CCAP report as proof of his prior conviction because he did not specifically object to its use at sentencing. Therefore, we need not address whether CCAP records are adequate proof of a qualifying conviction. The State relies on our decision in *State v. Saunders,* 2002 WI 107, 255 Wis. 2d 589, 649 N.W.2d 263.

2. Evidence presented

¶ 36. Wisconsin Stat. § 973.12(1) directs that "[a]n official report of the F.B.I. or any other governmental agency of the United States or of this or any other state shall be prima facie evidence of any conviction or sentence therein reported." We discussed the meaning of this language in *Farr*, 119 Wis. 2d at 656–60.

¶ 37. In *Farr*, we concluded that a probation report that did not state the dates of a defendant's prior convictions "left to conjecture whether any of them were within the previous five years." *Farr*, 119 Wis. 2d at 657–58. We determined that such a report was not an official report of the type described in Wis. Stat. § 973.12(1). *Id.* at 658. We did not decide whether a presentence or probation report that had the proper information could serve as an official report, but we explained:

> To be an official report under sec. 973.12(1), Stats., on which reliance may be placed, the report must contain relevant information regarding the issue of repeater status and must specifically include the date of conviction for the previous offense. ... The report in the present case did not contain such information and, therefore, could not be relied on for the penalty enhancement.

*Id.*

¶ 38. In *Saunders*, we reviewed the same statutory term, "official report," where a defendant challenged the State's use of an uncertified copy of a judgment of conviction, as failing to prove habitual criminality. We concluded that although certified copies of judgments are sufficient to constitute prima facie evidence of habitual criminality, Wis. Stat. § 973.12(1) does not require

370

the State to use certified copies of prior judgments of conviction as the basis for enhanced penalties. *Saunders,* 255 Wis. 2d 589, ¶ 24.

¶ 39. We also explained that before a circuit court may enhance a sentence, a criminal defendant's repeater status must be established. We explained that repeater status can be proved with a variety of evidence. *Id.,* ¶ 26. If the rules of evidence were to apply in proving prior convictions under § 973.12(1), those rules would require that the State use a certified copy of a judgment of conviction to satisfy its burden of proof. *Id.,* ¶ 38. However, the rules of evidence do not apply:

> Considering many factors, we conclude that the proceeding in which the state seeks to prove habitual criminality is, under Wisconsin's statutory scheme, more analogous to the sentencing process than to trial and, therefore, should be treated similarly in terms of evidentiary requirements.

*Id.*

¶ 40. We also held that just because the rules of evidence do not apply to documentary proof under Wis. Stat. § 973.12(1), the State is not relieved of its burden of proof. *Id.,* ¶ 47. Proof of prior convictions directly affects the sentence a criminal defendant may receive, and therefore, it affects a liberty interest. Accordingly, proof beyond a reasonable doubt is essential to the State's pursuit of additional punishment under Wis. Stat. § 939.62. *Id.,* ¶¶ 47–51.

¶ 41. In the course of our discussion, we drew several principles from our prior considerations of the proof of prior convictions: (1) an admission by the defendant must contain specific references to the date of the conviction and any period of incarceration, if relevant to applying Wis. Stat. § 939.62, and must be

371

made by the defendant, personally; (2) a certified copy of a judgment of conviction is evidence sufficient to prove prior convictions; (3) no decision had concluded that using an uncertified copy of the judgment of conviction or another type of report as evidence of prior convictions was prohibited. *Id.,* ¶¶ 21–28.

¶ 42. We reasoned that an uncertified copy of a judgment of conviction was being represented as an authentic copy of the original document, which we had previously concluded is sufficient proof of a prior conviction. *Id.,* ¶¶ 24–34. We noted that certifying a record helps to insure its authenticity, but that an uncertified copy is not materially different from a certified copy, and is identical with the exception of an official stamp. *Id.,* ¶ 28. The same information will be present in both documents. "[L]ittle is gained by distinguishing between certified and uncertified prior judgments of conviction in this context." *Id.,* ¶ 28. Accordingly, we concluded that an uncertified copy of a judgment of conviction can also serve "to prove prior convictions under Wis. Stat. § 973.12." *Id.,* ¶ 33. We noted that if an uncertified copy contains inaccurate information, the defendant should object and move the court to require the State to take remedial action, just as a defendant should do if a certified copy of a judgment contained a material error. *Id.,* ¶ 29.

¶ 43. In *Saunders,* we also noted that Saunders had made no objection to the use of an uncertified copy of the judgment. *Id.,* ¶ 62. We concluded that his lack of an objection was significant because it showed Saunders "stipulated to the mode of proof employed by the State." *Id.,* ¶ 63. However, we expressly concluded that this stipulation did not constitute a " 'waiver' of the State's overall proof requirement." *Id.*

¶ 44. We established the following related principles with regard to proof of habitual criminality at sentencing: (1) if the State fails to prove beyond a reasonable doubt that the defendant is a repeater, "then the sentencing court is without authority to sentence the defendant as a repeat offender," *id.*, ¶ 49; (2) when the State provides an official report that constitutes prima facie proof of a conviction pursuant to the requirements of Wis. Stat. § 973.12(1), a defendant's failure to object operates as a stipulation to the mode of proof that the State has chosen to use, *id.*, ¶ 63; (3) a lack of an objection explicitly aimed at the mode of proof offered by the State does not relieve the State of its burden to prove habitual criminality beyond a reasonable doubt, *id.*

██

¶ 45. It is important to note that one of the questions we addressed in *Saunders* was whether an uncertified copy of a judgment of conviction was what it purported to be, i.e., an authentic copy of the judgment of conviction. *Id.*, ¶ 28. That question differs markedly from the question posed by a CCAP report. With a CCAP report, the question is whether the report is an accurate narration of the judgment of conviction of a particular defendant, for a particular crime, on a particular date. *Koeppen,* 195 Wis. 2d at 127.

¶ 46. According to the "Policy on Disclosure of Public Information Over the Internet" provided by the Director of State Courts, a CCAP report is provided through a public-access internet website containing open record information, the WCCA. The Director of State Courts explains:

> Because information in the CCAP database changes constantly, WCCA is not responsible for subsequent entries that update, modify, correct or delete data. WCCA is not responsible for notifying prior requesters of updates, modifications, corrections or deletions.

http://wcca.wicourts.gov/index.xsl; choose "Public Records on the Internet" link, 2.g. (last visited June 24, 2006). Therefore, a CCAP report, by its own terms, is of questionable accuracy. It is not the official record of a criminal case, as the clerks of court for each county are the officials responsible for those records. Wis. Stat. § 59.40(2)(c). And, a CCAP report is not a copy of the actual judgment of conviction. Yet, it was offered to prove, beyond a reasonable doubt, that Bonds was convicted of felony forgery on a particular date. The disclaimer with which a CCAP report is conditioned causes us to have reasonable doubt about its accuracy.

¶ 47. Our concerns about the use of CCAP records to satisfy the requirements of Wis. Stat. § 973.12(1) do not affect our view that CCAP provides quality, immensely valuable, services to the citizens of Wisconsin and to those who work in the Wisconsin court system. We agree with the concurrence/dissent, that the creation of CCAP has facilitated efficient use of court resources and greater access to court information by the public. Concurrence/Dissent, ¶ 112. Although we have decided that a CCAP record is insufficient to establish prima facie proof that Bonds is an habitual criminal, our decision is driven in large part by the design of CCAP, which was not devised to afford proof of a factual proposition beyond a reasonable doubt. CCAP was designed to assist the circuit courts in case management functions and to afford greater public access to the court system. CCAP has been extraordinarily successful in accomplishing these purposes.

¶ 48. While *Saunders* clearly holds that documents other than a certified copy of a judgment of conviction may constitute an official report that would serve as prima facie proof of habitual criminality under Wis. Stat. § 973.12(1), only an uncertified copy of the

judgment and a presentence report that lists the crime and the date of conviction have been held to be sufficient by a Wisconsin appellate court. *Saunders,* 255 Wis. 2d 589, ¶ 33; *see also State v. Goldstein,* 182 Wis. 2d 251, 259, 513 N.W.2d 631 (Ct. App. 1994); *State v. Caldwell,* 154 Wis. 2d 683, 694–95, 454 N.W.2d 13 (Ct. App. 1990). And, as the court of appeals explained in *Caldwell,* one of the reasons for accepting that presentence report was the assurance of its accuracy because the investigating agent "expressly contemplated" the complaint's repeater allegation and the agent "verified" both the prior conviction and the date of conviction from sources other than the complaint. *Caldwell,* 154 Wis. 2d at 694.

¶ 49. Accordingly, we are persuaded that the reasoning of *Saunders* cannot be analogously applied to a CCAP report. CCAP records are not like uncertified copies of judgments in that CCAP reports do not purport to be identical to the court records, as photocopies do. The agreement to which all CCAP users are asked to adhere specifically warns that CCAP provides no warranty of accuracy for the data in its reports. We cannot, under those circumstances, consider the contents of a CCAP report to rise to the level of reliability sufficient to establish prima facie proof that a defendant has a prior qualifying conviction. In addition, Bonds did not stipulate to using a CCAP report as the "mode of proof" for habitual criminality.[11] He asserted before the circuit

---

[11] The concurrence/dissent is incorrect to assert that the repeater allegation is proved because of Bonds's admission in regard to a qualifying conviction. Concurrence/Dissent, ¶ 111. Although we do not agree that Bonds admitted a prior felony conviction, we point out that in order for a defendant to admit a prior conviction for purposes of proving habitual criminality, the defendant's admission must contain specific reference to the date of the conviction and any period of incarceration. *State v.*

court that the State had not proved habitual criminality beyond a reasonable doubt; he has continued to do so throughout the appellate process. Therefore, we conclude that by relying solely[12] on the CCAP report, and without other evidence that could prove Bonds's repeater status beyond a reasonable doubt, the State did not offer sufficient evidence to constitute prima facie proof that Bonds was an habitual criminal. Accordingly, the State did not meet its burden to prove habitual criminality.

### 3. Waiver

■

¶ 50. It is undisputed that the State has the burden of proof with regard to the question of whether Bonds is a repeater and we have concluded that the State did not satisfy that burden because it relied solely on a CCAP report. Therefore, in order for the State to have the power to sentence Bonds as a repeater, we would have to conclude that Bonds waived his right to challenge the evidence of habitual criminality because he did not object to using the CCAP report as the sole mode of proof in the circuit court.

¶ 51. The State contends that we concluded in *Saunders* that an objection to the sufficiency of the evidence of habitual criminality must be made in the circuit court or it is waived. The State no doubt refers to the following passage:

---

*Zimmerman,* 185 Wis. 2d 549, 557, 518 N.W.2d 303 (Ct. App. 1994). Bonds made no statement that could establish the date of a prior felony conviction.

[12] We do not exclude the use of a CCAP report as a tool to facilitate .a review with the defendant at sentencing of defendant's past history of criminal convictions.

> It would be an odd result if we were to preclude the state from offering an uncertified copy of a prior judgment of conviction when the defendant makes no objection to the submission of the document. It is commonly understood that when evidence is submitted at trial, much less for sentencing, a defendant who remains silent generally waives any objection to the submission of that evidence.

*Saunders,* 255 Wis. 2d 589, ¶ 31.

¶ 52. However, as we explained in ¶ 43 above, the State misunderstands the reason that we could have concluded waiver was present in *Saunders.* In *Saunders,* the evidence offered, a copy of the judgment of conviction, was sufficient to constitute prima facie proof of habitual criminality. Saunders offered no countering evidence. Therefore, on the record in *Saunders,* the State did provide sufficient evidence to meet its burden of proof.[13]

¶ 53. Here, the CCAP report was not sufficient to constitute prima facie proof of Bonds's repeater status. Therefore, not making a specific objection when evidence that is insufficient to constitute prima facie proof of a prior qualifying conviction is presented is not a waiver. Bonds did object to the sufficiency of the evidence the State presented, arguing that the State had

---

[13] As we explained in *Saunders:*

> The question ultimately becomes whether the state has submitted enough evidence to satisfy the sentencing judge beyond a reasonable doubt that the defendant has the requisite number of qualifying prior convictions. To answer this question the court must look to the totality of the post-trial evidence presented by the state, including copies of prior judgments of conviction, be they certified or uncertified.

*State v. Saunders,* 2002 WI 107, ¶ 53, 255 Wis. 2d 589, 649 N.W.2d 263.

not proved habitual criminality beyond a reasonable doubt. For the reasons explained above, a CCAP report does not come within our holding in regard to waiver set out in *Saunders*. Because the only evidence submitted was the CCAP report, we conclude that Bonds's objection is sufficient to defeat the State's contention that he waived his objection to proving habitual criminality with a CCAP report. Therefore, we conclude that the repeater portion of Bonds's sentence must be vacated.

## III. CONCLUSION

¶ 54. Four members of the court conclude that with sufficient proof, the State's post-conviction amendment of the basis for proving habitual criminality would have been permissible for two reasons: (1) The complaint satisfied the requirements of Wis. Stat. § 973.12 and of due process because Bonds had notice that he was being charged as an habitual criminal and of the potential maximum sentence he faced before he pled; and (2) Bonds was not prejudiced in making an intelligent plea as a result of the State's shift to a different prior conviction as the factual basis for its repeater allegation. However, a different majority of the court also concludes that the State's use of a CCAP report as evidence of Bonds's conviction does not constitute prima facie proof of that conviction and that Bonds did not waive his right to object to the State's use of the CCAP report. Accordingly, the court of appeals decision is reversed and the matter is remanded to the circuit court to vacate the enhancer portion of Bonds's sentence.

*By the Court.*—The decision of the court of appeals is reversed and remanded.

¶ 55. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the result reached by the court: The repeater enhancement to the defendant's sentence

378

must be vacated. The State's significant amendment of the repeater allegation after a guilty verdict is prohibited by Wis. Stat. § 973.12(1).

¶ 56. I write separately to express my disagreement with the court's rewriting of Wis. Stat. § 973.12(1) to allow significant amendments to the charging documents after a guilty verdict.

¶ 57. I also write separately to explain that CCAP data are not an official report under Wis. Stat. § 973.12(1) and therefore CCAP data alone are insufficient to make a prima facie case of repeater status required by Wis. Stat. § 973.12(1). Furthermore, CCAP data are not sufficient for the State to prove beyond a reasonable doubt the repeat offense allegation.

I

¶ 58. This court and the court of appeals have been chipping away for over a decade at the requirements in Wis. Stat. § 973.12(1) (2003–04)[1] that prior convictions forming the basis for sentence enhancement based on repeater status must be alleged in the complaint, information, or indictment before or at arraignment and before acceptance of any plea.

¶ 59. I say, enough already. The thrust of the statute is that the State must allege the prior offenses before the accused pleads. If the State cannot figure out

---

[1] Wisconsin Stat. § 973.12(1) states in relevant part:

Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea.

All references to the Wisconsin Statutes are to the 2003–04 version.

the prior offenses before a plea is accepted, the statute allows the court to give the district attorney a reasonable time to investigate prior offenses before the court takes the plea. What else can the legislature say to require that the State make the allegations of prior offenses before the accused pleads?

¶ 60. Previous cases have permitted the State to make minor amendments to its pleading alleging prior convictions in support of a repeat offender sentence enhancement slightly after arraignment and after a plea has been accepted. Here, the court extends the rule of amendments and, for the first time, declares that the pleading may be significantly amended after the trial is complete and when the defendant does not admit to the allegations of habitual criminality.

¶ 61. The present case differs significantly from the post-*State v. Martin/Robles*, 162 Wis. 2d 883, 470 N.W.2d 900 (1991), line of cases, in which the court held that the State's post-plea amendments did not violate Wis. Stat. § 973.12(1). In those cases, the court decided that even though the State complied with the statute, the court must nevertheless determine whether the amendment prejudiced the accused. Considering prejudice is required whenever a State's pleading is amended.

¶ 62. In the instant case the State did not comply with the statute. No way! After a jury trial, the State significantly changed the repeater allegation from three misdemeanors to one felony. This fact pattern cannot be squeezed into the statute or prior case law.

¶ 63. The case law has already accorded the State more than sufficient flexibility to be able to amend its pleading to allege properly a defendant's repeater status. The State should not be able to completely revise the penalty enhancement allegation after the guilt

phase of the trial is complete. Wisconsin Stat. § 973.12(1) does not permit such an amendment. The legislature has established a rule. A rule is a rule. The rule should be followed.

¶ 64. I divide this part of the opinion into three parts. First, I discuss the text and statutory history of Wis. Stat. § 973.12(1). Second, I discuss the case law and explain why this case can be distinguished from cases that interpret Wis. Stat. § 973.12(1) to permit the State's post-plea amendment. Third, I set forth my proposed approach to applying Wis. Stat. § 973.12(1).

A

¶ 65. I begin with the text of the statute. Wisconsin Stat. § 973.12(1) states that "any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea."

¶ 66. The statute does not explicitly prohibit the State from alleging prior convictions after a plea is accepted. Rather, it sets forth when an allegation of prior convictions may be made: before arraignment and the acceptance of any plea. Because Wis. Stat. § 973.12(1) does not clearly set forth an exclusive procedure by which to allege prior convictions, it could be interpreted to allow the State to allege prior convictions at other times.

¶ 67. This court has, however, previously concluded that the statutory history does not support this reading of the statute. After an exhaustive discussion of the history of the predecessor to Wis. Stat. § 973.12(1), in *State v. Martin/Robles,* 162 Wis. 2d 883, 470 N.W.2d 900 (1991), the court concluded that "[t]he statutory changes

make clear that the legislature has established the time of arraignment and of any plea acceptance as the cut-off point after which time a defendant can no longer face exposure to repeater enhancement for the crime set forth in the charging document and pleaded to by the defendant at arraignment."[2]

¶ 68. In the instant case, prior to the plea, the State alleged three misdemeanors as the factual basis for the defendant's repeater status. In the complaint, the State did not allege any prior felony conviction as the factual basis for its repeater allegation. By the time the State finally alleged the prior felony conviction (at the sentencing hearing), the defendant had been arraigned, plead not guilty, and been found guilty by a jury.

¶ 69. In the instant case, in rejecting the defendant's objection to the State's shift to the felony conviction, the circuit court stated that "[t]he criminal complaint is a notice document to give the defendant notice . . . that the State intends to ask the [c]ourt to find that the defendant is a habitual criminal under the law." This statement is, of course, not an accurate statement of the law. Were this an accurate statement, the State would merely have to put forth in its complaint that it intended to seek repeater status under Wis. Stat. § 939.62.

¶ 70. The State must do more than merely give notice that it will ultimately bring forth a showing of

---

[2] *State v. Martin/Robles,* 162 Wis. 2d 883, 900, 470 N.W.2d 900 (1991) (emphasis omitted).

In *Martin/Robles,* this court explained that prior to 1965, the statute permitted a repeater enhancer to a sentence at any time prior to the execution of the sentence. In 1965, the statute was amended to create the current language of the relevant portion of the statute. *Id.; see* § 2, ch. 422, Laws of 1965; *see also* majority op., ¶ 19 n.6.

previous offenses justifying sentencing as a repeater. The State must give notice so that an accused can determine the increase in penalty and determine whether the State can prove the particular prior convictions. With this notice an accused can determine how to plead to the present offense.[3] Depending on whether an accused thinks the State can prove the prior convictions, an accused may be more or less willing to enter a guilty plea to the present charge or to seek a negotiated plea. That is why the statute requires notice before the plea. Without this notice an accused is deprived of the chance to meaningfully assess the likelihood of the State's ability to prove the prior conviction and does not have an adequate basis on which to enter his plea and prepare his defense.[4]

¶ 71. It seems clear that the State's significant amendment of its pleadings after the jury verdict is not authorized by Wis. Stat. § 973.12(1).

B

¶ 72. In examining the case law applying Wis. Stat. § 973.12(1), I begin with *Martin/Robles,* in which this court considered two cases regarding an amendment to a repeat offender allegation. In one case, the

---

[3] *State v. Stynes,* 2003 WI 65, ¶ 34, 262 Wis. 2d 335, 665 N.W.2d 115.

[4] The criminal defense manual published by the State Bar of Wisconsin contains a long list of factors that affect a defendant's plea decision, some of which are relevant here. The most relevant factor is the defendant's belief that he actually committed the act with which he was charged (in this case, whether the defendant was convicted of the prior offenses within the statutory time frame alleged by the State in the complaint). L. Michael Tobin & Patrick J. Devitt, *Wisconsin Criminal Defense Manual* § 6.33 (4th ed. 2005).

defendant was arraigned and pleaded not guilty. After the arraignment, but before trial, the State was granted leave to amend the complaint to add a repeater allegation.[5] In the other case, the complaint also did not contain the repeater allegation. In that case, the repeater allegation was added to the complaint on the first day of trial, but before the trial began.[6]

¶ 73. In *Martin/Robles,* this court concluded that Wis. Stat. § 973.12(1) does not permit the addition of an allegation of repeat offender status after arraignment and acceptance of a plea when none was originally pleaded by the State. The court also stated that proof of prejudice is irrelevant under § 973.12(1).[7] The court explained:

> [P]roof of prejudice is an irrelevant consideration under sec. 973.12(1), Stats. The legislature has established a rule. Regardless of the kind of plea entered in response to the charges alleged at arraignment, the defendant's plea will be more meaningful if he or she is aware of the extent of potential punishment which ensues from a conviction of the crime.[8]

¶ 74. Notwithstanding the fact that the court held the State to the text of Wis. Stat. § 973.12(1) in *Martin/Robles,* the post-*Martin/Robles* case law suggests a view of the statute more lenient to the State. In cases after *Martin/Robles,* the State pleaded repeater status before the arraignment and acceptance of the plea, but later sought to amend the repeater allegations.

¶ 75. On several occasions, this court and the court of appeals have permitted post-plea amendments

---

[5] *Martin/Robles,* 162 Wis. 2d at 888–89.

[6] *Id.* at 890–91.

[7] *Id.* at 902–03.

[8] *Id.*

to the prior convictions alleged in a complaint in support of a repeat offender sentence enhancer as satisfying Wis. Stat. § 973.12(1). While the cases ease the restrictions on amendments to the State's allegations of repeater status—a post-plea amendment is not a per se violation of the Wis. Stat. § 973.12(1)—the cases can be distinguished from the instant case, in which the court keels over, bending backwards in favor of leniency to the State.

¶ 76. In *State v. Gerard*, 189 Wis. 2d 505, 525 N.W.2d 718 (1995), the complaint described the prior convictions but erroneously stated the penalty enhancer for one of the charges against the accused as six years when the maximum enhancement was only three years. The accused pleaded not guilty. Nine days after the plea was entered, and before trial, the accused moved to strike the enhancer on the basis of the error. The State conceded the error and moved for leave to amend the information to correct the error; the motion was granted. The accused was tried, convicted, and sentenced with the amended enhancer. The accused appealed the sentence, arguing that the amendments to the penalty enhancer violated Wis. Stat. § 973.12(1).[9] This court unanimously affirmed Gerard's sentence. The court concluded that the mistake did not affect the sufficiency of notice and that the amendment complied with Wis. Stat. § 973.12(1).[10]

¶ 77. The *Gerard* court turned to the issue of prejudice, concluding that prejudice is always a consideration with regard to amending a charging docu-

---

[9] *State v. Gerard,* 189 Wis. 2d 505, 509–11, 525 N.W.2d 718 (1995).

[10] *Id.* at 512–14.

ment.[11] Thus, even when the court concludes that the State's amendment is authorized by Wis. Stat. § 973.12(1), the court must consider whether the defendant was prejudiced.

¶ 78. In considering prejudice, this court emphasized that the accused, fully aware of the actual prison sentence he faced if convicted, failed to move to withdraw his not guilty plea and plead again. The court therefore concluded that the accused was not prejudiced by the State's clerical error in stating the maximum penalty faced by the defendant.[12]

¶ 79. The instant case is unlike *Gerard* in two important respects. First, the amendment in *Gerard* was a correction of an error in calculating the maximum sentence resulting from the enhancement. The State, presumably by clerical error or error in interpreting the law, overstated the accused's maximum exposure because of the enhancer as six years instead of three years.

¶ 80. In the instant case, on the other hand, the State completely changed the basis of the sentence enhancer, dropping the three prior misdemeanors originally relied upon and replacing them with a felony conviction.

¶ 81. Second, in the instant case, the amendment occurred after the verdict; it occurred at sentencing. In *Gerard,* in considering prejudice, the court emphasized the accused's failure to move to withdraw his not guilty plea before sentencing so he could plead again. The defendant in the instant case had already been tried and found guilty. Withdrawal of the plea is not an

---

[11] *Id.* at 517 n.9.
[12] *Id.* at 517–18.

386

alternative here. I need not reach the issue of prejudice here because I conclude that Wis. Stat. § 973.12(1) does not allow the amendment.

¶ 82. In *State v. Campbell*, 201 Wis. 2d 783, 549 N.W.2d 501 (Ct. App. 1996), the State alleged three prior misdemeanor convictions for the repeat offender sentence enhancement. A plea of not guilty was entered. The accused and the State then entered into plea negotiations whereby the accused agreed to plead no contest to certain charges in exchange for other charges being dropped. The State amended the information and added a fourth misdemeanor as part of the repeater enhancement because one of the misdemeanors was on appeal and the State wanted to be sure that if that conviction were reversed three convictions remained. The amended information was filed and the accused entered a plea of no contest to the amended information, objecting to the amendment but stipulating to the facts of the four convictions.

¶ 83. In other words, the accused in *Campbell* was allowed to withdraw his initial not guilty plea, the State was allowed to amend the information, and the accused was allowed to enter a new plea to the amended information. Similarly, in *State v. Fields*, 2001 WI App 297, ¶¶ 2–3, 8, 11–14, 249 Wis. 2d 292, 636 N.W.2d 897, the court of appeals held that Wis. Stat. § 973.12(1) was satisfied when the State amended the penalty enhancement before the plea of no contest was accepted. In effect, a second arraignment occurred after the amendment.

¶ 84. Even though the statutory requirements were met, the court of appeals in both *Campbell* and *Fields* (adhering to *Gerard*'s rule that prejudice is always a consideration with regard to amending a charging

document) went on to determine that the accused was not prejudiced by the amendment.[13]

¶ 85. Although both the instant case and *Campbell* involve a new allegation of a prior conviction, the two cases are easily distinguished. *Campbell* addressed an amendment after the accused pleaded not guilty, and the accused was allowed to replead after the amendment. In the instant case, however, the defendant does not have the option to replead.

¶ 86. This court revisited Wis. Stat. § 973.12(1) in *State v. Stynes,* 2003 WI 65, 262 Wis. 2d 335, 665 N.W.2d 115. In *Stynes,* the complaint alleged prior convictions dated March 18, 1998. The accused's prior convictions were actually dated March 17, 1998. The accused pleaded not guilty and a jury found him guilty of all the charges. After he was sentenced, the accused moved to have the enhanced sentence commuted because he was not provided notice of the prior convictions under § 973.12(1). The circuit court denied the motion. The court of appeals reversed the circuit court and reduced the defendant's sentence to a sentence without the penalty enhancement.[14]

¶ 87. Observing that the "error of one calendar day did not mislead or confuse Stynes" and that the erroneous conviction date did not violate Wis. Stat. § 973.12(1),[15] this court reversed the court of appeals and held that the defendant was "provided with the information necessary to identify which of his prior

---

[13] *State v. Fields,* 2001 WI App 297, ¶ 13, 249 Wis. 2d 292, 636 N.W.2d 897; *State v. Campbell,* 201 Wis. 2d 783, 790–93, 549 N.W.2d 501 (Ct. App. 1996).

[14] *Stynes,* 262 Wis. 2d 335, ¶¶ 6–9.

[15] *Id.,* ¶ 21.

convictions would be used to establish his repeater status."[16]

¶ 88. In *Stynes,* this court made clear that an accused must be provided with information to identify *which of his prior convictions would be used* to establish repeater status. It is clear in the instant case that the defendant was not provided notice of which of his prior convictions would be used to establish his repeater status because the only prior conviction relied upon by the State was not alleged until the sentencing hearing.

¶ 89. In the instant case, the majority opinion makes much of the fact that the amendment after the jury verdict did not prevent the defendant from assessing his maximum potential penalty before he pleaded because the enhanced sentence was the same under the felony as it was under the three misdemeanors.[17] I disagree with the majority opinion.

¶ 90. Part of an accused's calculus in determining how to plead includes a meaningful assessment of the maximum penalty to which he or she could be subjected as a result of the enhancer and a meaningful assessment of whether the State can prove the predicate prior convictions to justify an enhanced sentence. Thus, an accused might be relying on the fact that the State cannot prove the alleged prior convictions at sentencing.[18] When the State significantly amends the alleged

---

[16] *Id.,* ¶ 32.

[17] Majority op., ¶ 31.

[18] It is unclear in the instant case why the State switched from the misdemeanors to the felony. One explanation at oral argument was that the State feared that its clerical error in the misdemeanor conviction date would cause it problems. Clearly, a total substitution of an offense creates more problems than a clerical error when certified copies of the conviction had been attached to the complaint.

prior convictions after a jury verdict, the State has altered the accused's assessment of the maximum penalty to which he or she could be subjected as a result of the penalty enhancement.

¶ 91. *State v. Wilks,* 165 Wis. 2d 102, 477 N.W.2d 632 (Ct. App. 1991), differs from the other cases. In *Wilks,* the court of appeals did not allow the State's amendment of the repeater allegation. In *Wilks,* the State alleged a May 24, 1986 forgery conviction as the basis for the accused's repeater status. The defendant pleaded no contest to the offense, believing that the State could not convict him as a repeater.[19] During an adjournment before sentencing, and after the accused entered a no contest plea, the State conceded that the May 24, 1986, forgery conviction did not exist and instead moved to use a July 3, 1985 forgery conviction

A reasonable inference is that both the State and the defendant had doubts about the State's ability to place the misdemeanors within the five-year statutory time period. The misdemeanors were for crimes committed in 1997 with dates of conviction listed as April 15, 1998 and varying sentencing dates from April 15, 1998 to August 20, 1999. The criminal complaint in the present case alleged that the defendant committed a battery on July 25, 2003.

If the defendant doubted that the State could prove the repeater convictions, the defendant assessed the extent of the possible punishment in one way. If the defendant concluded the State could prove the convictions, he assessed the extent of possible punishment another way. Either assessment might affect his plea. By the time the case came before this court, the State and defendant probably had determined whether the State could have proved the misdemeanors.

[19] *State v. Wilks,* 165 Wis. 2d 102, 110, 477 N.W.2d 632 (Ct. App. 1991).

as the basis for repeater status; the motion was granted.[20]

¶ 92. The court of appeals in *Wilks* did not allow the State to correct the error. Rather the court of appeals commuted the enhanced sentence, concluding that the accused did not have notice prior to the entering and acceptance of his plea of the prior conviction upon which the State would rely.[21] The court of appeals in *Wilks* interpreted *Martin/Robles* "to bar post-plea repeater amendments which meaningfully change the basis upon which the defendant assessed the extent of possible punishment at the time of plea."[22]

¶ 93. In *Stynes,* this court distinguished *Wilks* based on the obvious fact that the error in *Stynes* was a misstatement of the prior conviction by one day, whereas in *Wilks* there was no obvious connection between the date of the crime alleged and the date of the prior conviction the State ultimately relied upon.[23]

¶ 94. The instant case is more like *Wilks* than it is like *Stynes*. Unlike *Stynes,* in which the accused clearly had notice prior to trial of the prior convictions to be relied upon by the State, the accused in the instant case had no such notice. Prior to sentencing, there was no

[20] *Id.* at 105–06.

[21] *Id.* at 110, 112.

[22] *Id.* at 111 ("The supreme court has appropriately noted the due process considerations which underpin this portion of the repeater statute. The state's 'changing of the rules' after Wilks had pled offends these considerations.").

[23] *Stynes,* 262 Wis. 2d 335, ¶¶ 22–28 ("In the case at bar, however, there is no question that the State was intending to refer to Stynes' convictions that occurred on March 17, 1998, convictions that actually existed.").

way for the defendant in the instant case to know that the State would rely on allegations of a prior felony conviction.

¶ 95. Indeed, the notice in the instant case was probably less effective than the notice in *Wilks*. In *Wilks*, the accused was at least aware that the State was going to rely on a prior forgery conviction, even though the year of the conviction was erroneous. In the instant case, the State shifted from relying on three misdemeanors to relying on an unrelated felony. Surely, if the State cannot change from a felony listed in one year to a similar felony listed in another year, the State cannot change from three misdemeanors to a previously unmentioned felony.

¶ 96. Because the defendant in the instant case was not informed of the prior offenses on which the repeat offender sentence enhancement ultimately relied, *Stynes* dictates that the defendant was not provided with adequate notice to satisfy Wis. Stat. § 973.12(1) or due process. *Stynes* makes clear that an accused has the right to have notice of the prior offenses upon which the State relies before the accused enters a plea. Without explanation or discussion, the majority abandons this rule.

¶ 97. As I see it, allowing the State to change completely the factual basis for its repeater allegation during sentencing in the instant case "is yet another example of the lower burden this court places on the State when depriving a person of his or her liberty than it places on private litigants in civil actions."[24] The State should not be permitted such leniency when the

[24] *Id.,* ¶ 41 (Abrahamson, C.J., concurring) (citing *State v. Jennings,* 2003 WI 10, ¶ 38, 259 Wis. 2d 523, 657 N.W.2d 393 (Abrahamson, C.J., dissenting)).

392

deprivation of a person's liberty is at stake. As I stated in my concurring opinion in *Stynes:*

> This court's jurisprudence thus upsets a bedrock principle in our Constitution that because "the accused during a criminal prosecution has at stake an interest of immense importance" the burden on the State in a criminal prosecution is the highest burden required of any litigant and the margin of error allowed is the lowest.[25]

C

¶ 98. I therefore once again propose a bright-line rule adhering to the text of the statute and the case law. If an accused pleads guilty or no contest, and the circuit court accepts that plea, if the State thereafter wants to amend the pleadings on the repeater enhancement, the circuit court shall allow the amendment and allow the accused to replead. If an accused pleads not guilty, the State may amend the charging document to accurately and precisely recite all predicate convictions, including the offenses of convictions alleged, whether the offense was a felony or misdemeanor, and the date of the conviction, prior to the impaneling of the jury and the start of a trial. If the State amends the charging document, the circuit court shall allow the accused to replead. If an accused pleads not guilty, the State may not amend its pleadings on the sentence enhancement after the impaneling of the jury and the start of trial.

¶ 99. Such a rule would encourage the State to take great care in the charging documents, would assist accuseds in determining their plea, would reduce use-

---

[25] *Stynes,* 262 Wis. 2d 335, ¶ 42 (Abrahamson, C.J., concurring) (quoting *In re Winship,* 397 U.S. 358, 363–64 (1970)).

less litigation, and would ensure that enhanced repeater sentences are based only on qualifying convictions.[26]

¶ 100. From where I sit, it appears that prosecutors could avoid the "amendment problems" caused by repeater allegations by attaching, as standard practice, certified copies of prior judgments of conviction to the charging documents when repeater status is alleged. Similarly, as I see it, circuit courts ought to make it standard practice not to accept a plea on a sentence enhancer without certified copies of prior judgments of conviction on record with the court.

¶ 101. In sum, I do not agree with the conclusion of the majority opinion that the State may just completely change the allegation of prior convictions at the sentencing phase of a trial. The State's amendments after the jury verdict that occurred in the instant case are prohibited by Wis. Stat. § 973.12(1). I therefore write separately.

## II

¶ 102. I agree with the conclusion reached by the majority opinion that CCAP data are not an official report under Wis. Stat. § 973.12(1) and therefore are insufficient to make a prima facie case of repeater status required by Wis. Stat. § 973.12(1). Furthermore, the State has failed to prove repeater status under Wis. Stat. § 973.12(1) beyond a reasonable doubt. I rest my analysis on this court's opinion in *State v. Saunders,* 2002 WI 107, 255 Wis. 2d 589, 649 N.W.2d 263.

---

[26] *See Stynes,* 262 Wis. 2d 335, ¶ 37 (Abrahamson, C.J., concurring).

¶ 103. Contrary to the statements in the majority opinion and Justice Crooks's concurrence/dissent,[27] this court did not hold in *Saunders* that an uncertified copy of a prior judgment of conviction is an "official report" under Wis. Stat. § 973.12(1).

¶ 104. Similarly, I conclude that CCAP data are not an official report under Wis. Stat. § 973.12(1). I agree with the majority opinion: CCAP data alone are insufficient to make a prima facie case of repeater status as required by Wis. Stat. § 973.12(1).[28]

¶ 105. *Saunders* held that an official report is not the only means available to the State to prove a defendant's repeater status.[29] While an official report alone makes out a prima facie case of repeater status under § 973.12(1), other evidence may also suffice. If the State chooses not to use an official report, "[t]he question ultimately becomes whether the state has submitted enough evidence to satisfy the sentencing judge beyond a reasonable doubt that the defendant has the requisite number of qualifying prior convictions. To answer this question the court must look to the totality of the post-trial evidence presented by the state, including copies of prior judgments of conviction, be they certified or uncertified."[30]

---

[27] *See* majority op., ¶ 41; Justice Crooks's concurrence/dissent, ¶¶ 121, 123.

[28] *See* majority op., ¶ 49.

[29] *State v. Saunders*, 2002 WI 107, ¶¶ 26, 34, 255 Wis. 2d 589, 649 N.W.2d 263 ("Moreover, the portion of s. 973.12(1) that speaks of official government reports constituting prima facie evidence of prior convictions supports the inference that the state may use other forms of evidence—ones not entitled to prima facie deference—to meet its proof requirements under the subsection.").

[30] *Saunders,* 255 Wis. 2d 589, ¶ 53.

¶ 106. Thus, in *Saunders,* the court considered the uncertified copy of the judgment of conviction, defense counsel's representation that there was no dispute as to the fact that there was a judgment of conviction entered into the record, and the undated but otherwise accurate information in the presentence report. The *Saunders* court therefore concluded that the State had presented sufficient evidence to prove the repeater allegations beyond a reasonable doubt.[31]

¶ 107. In *Saunders,* Justice Bradley dissented and, in an opinion that I joined, concluded that the uncertified judgment of conviction was insufficient to prove repeater status.[32]

¶ 108. In the instant case, I conclude that the CCAP data are insufficient evidence to prove the repeater allegations beyond a reasonable doubt.

¶ 109. For the reasons set forth, I concur.

¶ 110. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this opinion.

¶ 111. N. PATRICK CROOKS, J. (*concurring in part, dissenting in part*). I join that portion of the majority opinion that concludes that Bonds was not prejudiced by the State's (State of Wisconsin) postconviction amendment adding the felony conviction. Majority op., ¶ 31. I write separately because I strongly disagree with the majority's determination that the State's use of a CCAP report offered to establish that Bonds had a felony conviction did not constitute prima facie evidence of that conviction. The CCAP report was sufficient to make a prima facie case that Bonds had

---

[31] *Id.,* ¶¶ 59–69.

[32] *See id.,* ¶¶ 72, 85–95 (Bradley, J., dissenting).

such a conviction and was an habitual criminal. I also disagree with the majority's conclusion that Bonds did not, in effect, stipulate to the mode of proof utilized by the State—the CCAP report—since the record establishes that Bonds and his attorney conceded, for repeater purposes, the prior felony conviction of Bonds. The State clearly met its burden of proof beyond a reasonable doubt here. In addition, the concession by Bonds, in the colloquy with the circuit court judge, that he had a felony forgery conviction amounted to an admission in regard to that qualifying conviction. By refusing to accept the State's use of the CCAP record, the majority opinion undermines the confidence that the public now rightfully has in the accuracy of CCAP records. For the reasons stated herein, I respectfully dissent from Section II – D of the majority opinion.

I

¶ 112. The Consolidated Court Automation Program (CCAP) was created in 1987 in an effort to provide automation in Wisconsin circuit courts. CCAP develops, implements, and maintains court automated information systems for the Wisconsin Court System. The Wisconsin Court System has explained:

> CCAP represents a major undertaking by the Director of State Courts' Office, under the direction of the Wisconsin Supreme Court, to automate the labor-intensive and paper-based processes in the county trial courts. It brings state-of-the-art computer technology and software to Wisconsin's circuit courts by developing hardware and software and providing training and technical support. ... CCAP is a state-initiated and funded program that supports joint state/county responsibility for the court system.

¶ 113. In the 1999 "State of the Judiciary Address," the Chief Justice of the Wisconsin Supreme Court hailed the fact that CCAP was "widely accepted across the state and is a model for other states." The correctness of that statements is, I believe, beyond dispute. This court has been justifiably proud of CCAP. The Consolidated Court Automation Program has been, and continues to be, a top priority for the Wisconsin Court System. Currently, CCAP employs 64 people, and in 2003–05, its budget was $20,802,000.[1]

¶ 114. The most public "face" of CCAP is the Internet-based Wisconsin Circuit Court Access (WCCA) program, which provides access to circuit court information for the public. First implemented in 1999, WCCA was

> [c]reated in response to an increasing number of requests for court records from district attorneys, sheriffs' departments, and other court business partners. Title companies, abstractors, members of the media and the general public have also benefited from WCCA. Many have come to rely on WCCA as their primary means of accessing circuit court data.

Wisconsin Circuit Court Access Oversight Committee, Final Report, March 2006, page 1. "Maintaining public court records on the internet provides advantages to the public, to justice system agencies and to the courts." *Id.*

---

[1] Total expenditures on the Consolidated Court Automation Program (CCAP) since its inception amount to $116,048,078. Certainly, not all of these funds have been expended on the Wisconsin Circuit Court Access (WCCA) program website, since CCAP is responsible for meeting all of the information technology needs of the Wisconsin Court System. Its mission includes "maintain[ing] reliable ... data ...." http://wicourts.gov/about/organization/offices/ccap.htm (last visited June 24, 2006).

¶ 115. The WCCA website explains to users that it "provides public access to the records of the Wisconsin circuit courts for counties using the Consolidated Court Automation Programs (CCAP) Case Management system. These records are open to public view under Wisconsin's Open Records law, sections 19.31–19.39, Wisconsin Statutes." The records maintained by CCAP are the records of the circuit courts. The WCCA Oversight Committee noted that

> [e]rrors on the Wisconsin Circuit Court Access (WCCA) Internet Site result from an error in the underlying court record in the county responsible for the case. Errors are corrected when the case record is changed or updated by the court official responsible, usually the clerk of circuit court or circuit court judge

The WCCA website explains:

> CCAP does not modify data contained on WCCA in any way. All the data in the CCAP database is entered in the individual counties where the case files are located. If you believe any of the data contained in this database is inaccurate, please contact the circuit court where the original record was created and filed.

http://wcca.wicourts.gov/faqnonav.xsl;jsessionid= ACFFACB55745A61712A03EFF70983E47.render12# Faq11 (last visited June 24, 2006).

## II

¶ 116. Wisconsin Stat. § 973.12(1) provides in relevant part: "An official report of the F.B.I. or any other governmental agency of the United States or of this or any other state shall be prima facie evidence of any conviction or sentence therein reported." Wis. Stat.

§ 973.12(1) (2003–04).[2] This statutory language plainly states that an official government report serves as prima facie evidence of a conviction. The majority has failed to articulate a satisfactory rationale for refusing to treat a CCAP record as an official government report.

¶ 117. In *State v. Farr,* this court considered whether a presentence report that contained reference to a defendant's prior record met the status of an official report pursuant to Wis. Stat. § 973.12(1). *State v. Farr,* 119 Wis. 2d 651, 652, 350 N.W.2d 640 (1984). In construing the phrase "official report," this court explained:

> To be an official report under sec. 973.12(1), Stats., on which reliance may be placed, the report must contain relevant information regarding the issue of repeater status and must specifically include the date of conviction for the previous offense. . . . such official report must contain critically relevant facts to be acceptable for applying the repeater statute.

*Id.* at 658. Because the presentence report at issue in *Farr* "showed that the defendant had five prior felony convictions," but "did not provide the dates of conviction," this court determined it "could not be relied on for the penalty enhancement." *Id.* at 657–58.

¶ 118. In *State v. Caldwell,* the court of appeals applied *Farr* to uphold the sufficiency of a presentence report to constitute prima facie proof of the defendant's repeater status. *State v. Caldwell,* 154 Wis. 2d 683, 695, 454 N.W.2d 13 (Ct. App. 1990). As the presentence report contained specific information on the date of conviction of Caldwell's previous offense, the court held "the state proved repeater status by virtue of Caldwell's

---

[2] All subsequent references to the Wisconsin Statutes refer to the 2003–04 version unless otherwise indicated.

presentence report." *Id.* at 693 (citing *Farr,* 119 Wis. 2d at 658). Similarly, in *State v. Goldstein,* the court of appeals cited *Caldwell* for the position that "a presentence report can qualify as an official report within the meaning of § 973.12(1), Stats., if the report includes the date of conviction for the prior offense." *State v. Goldstein,* 182 Wis. 2d 251, 257, 513 N.W.2d 631 (Ct. App. 1994)(citation omitted). The court of appeals then determined that the presentence report in that case satisfied the proof requirements of Wis. Stat. § 973.12(1). *Id.* at 259.

¶ 119. In 2002 this court, again, had the opportunity to consider "how prior convictions are 'proved by the state' under Wis. Stat. § 973.12(1) (1999–2000) for sentence enhancement." *State v. Saunders,* 2002 WI 107, ¶ 2, 255 Wis. 2d 589, 649 N.W.2d 263 (footnote omitted). The *Saunders* court considered whether an uncertified copy of a prior judgment of conviction may be an acceptable means of proving that a defendant is an habitual criminal under Wis. Stat. § 939.62. *Id.,* ¶ 3.

¶ 120. The *Saunders* court concluded "that the rules of evidence do not apply to documentary evidence the state uses to prove the existence of prior convictions for repeater purposes," and that an uncertified copy of a judgment satisfied the statute. *Id.,* ¶¶ 52, 70. Doing so, it explained that "[t]he plain language of Wis. Stat. § 973.12(1) . . . does not demand that prior convictions be proved through any specific method, such as the use of a certified copy of a judgment of conviction." *Id.,* ¶ 26. In *Saunders,* this court did nothing to cast any doubt on either of the earlier court of appeals' decisions that considered the proof requirements of Wis. Stat. § 973.12(1). *Id.*

¶ 121. The majority purports to apply the tests set forth by this court in *Farr* and *Saunders* to reject

classifying a CCAP record as an official report, despite the fact that the decisions in those cases strongly support the recognition of a CCAP record as an official government report that constitutes prima facie evidence of prior convictions. *See* majority op., ¶ 42. First, reports from CCAP are reports of the Wisconsin circuit courts, and as such, they are clearly official reports. They are no less "official" because they may be accessed electronically. Second, CCAP reports meet the test set forth in *Farr*, as they "contain relevant information regarding the issue of repeater status and . . . specifically include the date of conviction for the previous offense." *Farr*, 119 Wis. 2d at 658.

¶ 122. The majority makes much of the fact that CCAP users are presented with a disclaimer that provides, in part, " 'CCAP provides no warranties insuring the accuracy of the information contained in records available on WCCA. . . .' " Majority op., ¶ 7 (citation omitted). The majority then concludes that, in light of the disclaimer, "a CCAP report, by its own terms, is of questionable accuracy." *Id.*, ¶ 46.

¶ 123. The fact that CCAP records, available through WCCA, are preceded by a disclaimer does not indicate they are of "questionable accuracy." Certainly the CCAP report meets the *Saunders* test of being "at least as reliable as a summary of the conviction in an official government report." *Saunders,* 255 Wis. 2d 589, ¶ 28. As *Saunders* pointed out, even a certified copy of a judgment can contain errors.

> If an uncertified copy [of a judgment of conviction] contains inaccurate information about the prior conviction, the defendant should object to the accuracy of the document. . . .
>
> After all, a defendant is always permitted to contest

the authenticity or, more likely, the accuracy of even a *certified* copy of a judgment of conviction. Human beings complete these forms and, although we would hope that typographical errors within these important documents are rare, errors may nonetheless exist. ... Put simply, judicial personnel are not infallible. Accordingly, even a certified copy of a document establishing a prior conviction may be rebutted, just as an inaccuracy in a presentence investigation report may be challenged.

*Id.,* ¶¶ 29–30 (footnote omitted)(emphasis in original). There is no rational basis for this court to consider an uncertified copy of a judgment of conviction, or a presentence report, to be an "official government report" and yet to disallow a CCAP report—a report of the Wisconsin circuit court system—from that classification.

¶ 124. The majority seems stunned that the State would ask the circuit court to rely on a report of such "questionable accuracy." "[A] CCAP report, by its own terms, is of questionable accuracy. ... Yet, it was offered to prove, beyond a reasonable doubt, that Bonds was convicted of felony forgery on a particular date." Majority op., ¶ 46. The majority then concludes that "[t]he disclaimer with which a CCAP report is conditioned causes us to have reasonable doubt about its accuracy." *Id.*

¶ 125. Yet, as noted above, any report may contain inaccuracies, just as any report may be challenged for accuracy. As *Saunders* explained:

It would be an odd result if we were to preclude the state from offering an uncertified copy of a prior judgment of conviction when the defendant makes no objection to the submission of the document. It is commonly understood that when evidence is submitted

403

> at trial, much less for sentencing, a defendant who remains silent generally waives any objection to the submission of that evidence.

*Saunders,* 255 Wis. 2d 589, ¶ 31 (footnote omitted). *Saunders* also addressed the issue of a stipulation to the mode of proof, as this court held that when the state provides an official report that constitutes "prima facie proof of a conviction pursuant to the requirements of Wis. Stat. § 973.12(1), a defendant's failure to object [to an inaccurate representation in that proof] operates as a stipulation to the mode of proof that the State has chosen to use. . . ." Majority op., ¶ 44 (citing *Saunders,* 255 Wis. 2d 589, ¶ 63).

¶ 126. In the initial complaint in this case, the State cited three criminal misdemeanor offenses supporting its habitual criminality allegation. The misdemeanors included criminal damage to property, disorderly conduct, and battery. The only time Bonds was convicted of forgery, a felony, was in 1998.

¶ 127. Counsel for Bonds objected to the amendment of the complaint to substitute the felony conviction for the three misdemeanor convictions. However, counsel did not object to the accuracy of the fact of the felony conviction, to the use of a CCAP record, nor to CCAP's record of the date of conviction. In fact, counsel for Bonds referenced his own use of CCAP to verify dates of conviction and sentencing. Counsel's objection was to the substitution of the felony for the misdemeanor offenses, which counsel suggested to the court created a defect in the complaint.

> MR. FUGLE (Counsel for Bonds): Your Honor, I believe that the State's motion to essentially amend the complaint at this time is too late. I believe that the reason the State wishes the Court to rely upon the

felony conviction is they aren't able to prove the convictions they have alleged within the body of the complaint.

The conviction dates for those were in April, April 15, 1998. In the complaint they are alleged as being date of conviction of August 20, 1999. Those are dates which, upon my review of the Wisconsin Circuit Court access program the date that Mr. Bonds was in fact sentenced on withheld sentence after a probation violation. However, I think the complaint is in fact defective.

I think the State cannot, at this late juncture move to amend the complaint when it has found some other conviction that may in fact be relevant and therefore we are asking that the Court not only find the state has not met the burden in terms of proving this beyond a reasonable doubt, but also that they in fact have nothing to prove as the complaint, as it alleges habitual criminality is defective.

¶ 128. The circuit court rejected the argument that the State's complaint was defective, explaining that there was no statutory requirement that the complaint list the particular crimes upon which a repeater charge would be based. The State had fulfilled the statute's mandates, since it had successfully put Bonds on notice that he was being charged as a repeat offender. The State also satisfied the requirement of Wis. Stat. § 939.62 that the defendant be convicted of a felony, or three misdemeanors, during the five-year period immediately preceding the commission of the crime for which Bonds was being sentenced.

¶ 129. Bonds did dispute that the new offense fell within the five-year period within which he may be charged as an habitual criminal. However, the dispute was not over the fact of any criminal convictions, or

even the dates of those convictions. Rather, Bonds disputed the fact that the court tolled the ten months he was incarcerated from the five-year period.

¶ 130. In fact, during the sentencing hearing Bonds, himself, made reference to his felony forgery conviction. "THE COURT: They revoked you for absconding. *MR. BONDS: I got found guilty for absconding, failure to see my parole officer. And I got revoked for remainder of my sentence on the forgery case.*" (Emphasis added.) In fact, the circuit court expressly asked Bonds if it had misstated the facts.

THE COURT: . . . You are in prison now because of your behavior, because of the forgery, because of your prior record. . . .

The time you are serving right now is because of you.

MR BONDS: Well, Your Honor, I know I'm in this situation here. What I say won't really matter to the Court.

THE COURT: What I'm saying is not true? Tell me.

MR. BONDS: I know my predicament, my past. What I went through. I know the type of person I am. The district attorney, no one in here knows what type of person I am but me. I'm not a bad person. I'm not. I don't go out and rob, steal, do none of that. I don't have to do none of that. Sending me to prison is just wasting tax payers money.

THE COURT: You don't have a conviction for robbery?

MR. BONDS: In '91. I was 17 years old.

THE COURT: You said you don't rob people.

406

MR. BONDS: I was a juvenile. It wasn't actually a robbery. I was party to a crime, P.T.A.C.

THE COURT: You were convicted of battery?

MR. BONDS: In the past, yes, I have.

It is evident from the record here that Bonds was given ample opportunity to challenge the accuracy of the State's proof concerning his felony conviction. In fact, not only did he fail to object to the accuracy of the CCAP record, he specifically referred to his felony conviction for forgery.

¶ 131. Counsel for Bonds did not deny the accuracy of the felony conviction either, but rather he in effect conceded it, as did Bonds. At the sentencing hearing, his attorney stated: *"[w]e are asking that the court consider less than the maximum sentence. I think if the Court feels that prison time is necessary, that 12 months would be sufficient."* (Emphasis added.) Yet the crime for which Bonds was convicted in this case was a Class A misdemeanor, which carries a maximum jail sentence of nine months. It was only the habitual offender enhancer, under Wis. Stat. § 939.62, that allowed the court to increase the nine-month sentence to not more than two years. Clearly, the attorney for Bonds acknowledged the felony forgery conviction and was not challenging the CCAP report or its accuracy.

¶ 132. The CCAP record was an official report. As an official report, the CCAP record constituted prima facie evidence. Bonds' concession concerning the felony forgery conviction amounted to an admission in regard to that qualifying conviction, and also, in effect, was a stipulation to the mode of proof utilized by the State. The concession by counsel for Bonds amounted to such a stipulation as well. As the majority correctly reasons,

when the State has made a prima facie showing of repeater status, the proof is then sufficient. *See* majority op., ¶ 51. In order to challenge proof that is sufficient, the majority recognizes that a defendant must object at sentencing, or he or she will have no basis for contending that the evidence was not sufficient on appeal. *See id.* Put another way, when the state has provided prima facie proof of a qualifying prior conviction or convictions, in the absence of a challenge to the accuracy of that evidence, and where there are stipulations such as we have here, the state will have satisfied its burden to prove the prior conviction or convictions beyond a reasonable doubt. *See Saunders,* 255 Wis. 2d. 589, ¶ 63.

¶ 133. For the reasons stated herein, I respectfully dissent.

¶ 134. I am authorized to state that Justices JON P. WILCOX and DAVID T. PROSSER join this concurrence/dissent.